1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
Clerk
District Court

MAR 30 2022

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

JOSHUA GRAY,

                Plaintiff,

        v.

IMPERIAL PACIFIC INTERNATIONAL
(CNMI), LLC,

                Defendant.

CIVIL CASE NOS. 1-19-cv-00008 and
1-19-cv-00020

**DECISION AND ORDER**
**CONDITIONALLY GRANTING**
**DEFENDANT'S MOTION TO VACATE**
**ENTRY OF DEFAULT**

Before the Court is Defendant Imperial Pacific International (CNMI), LLC's ("IPI")

amended motion to vacate the entry of default. (Mot. to Vacate ("Mot."), ECF No. 111.) The Court

entered default against IPI pursuant to Federal Rule of Civil Procedure 37 after finding IPI in

contempt of court for its repeated discovery violations despite multiple hearings on the matter.

(Min., ECF No. 79.) The motion was fully briefed and argued. (Min., ECF No. 134.)  Having heard

the arguments of counsel and considered the applicable law and record in this case, the Court now

issues this decision conditionally granting IPI's motion.

## I.      BACKGROUND

Plaintiff Joshua Gray ("Gray") filed his initial lawsuit with this Court in 2019, alleging in

his complaint that Defendant IPI (1) wrongfully terminated him in January 2019 in violation of

public policy because of his complaints of IPI's violation of immigration laws, and (2) wrongfully

terminated him in violation of 42 U.S.C. § 1981 on the basis of him being an African American

and a U.S. citizen.  (Second Am. Compl. ("SAC") ¶¶ 29-38, ECF No. 19.)  Plaintiff alleges that IPI

gave his responsibilities over to Lucy Guo, a Chinese woman who is a non-U.S. citizen.  (*Id.* ¶ 24.)

Plaintiff then filed another complaint against IPI alleging both a status-based employment discrimination claim and a retaliation-based discrimination claim under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et. seq*.), which the Court consolidated with this matter. (Compl. ¶¶ 33-48, ECF No. 1, Civil Action 1:19-cv-00020; Order Consolidating Cases, ECF No. 26.)

On April 8, 2021, a status conference was held to discuss IPI's pending discovery deficiencies and whether the Court should enter default against IPI for its repeated discovery violations. (Min., ECF No. 79.) Particularly, the Court first found IPI in contempt for discovery violations on February 4, 2021 after IPI failed to comply with the Court's September 2020 discovery order. (Min., ECF No. 56; Min., ECF No. 43.) After IPI still failed to comply with the Court's discovery order, the Court issued an order to show cause against IPI on February 24, 2021 and ordered it to appear on March 4, 2021. (Order to Show Cause, ECF No. 67; Discovery Order, ECF No. 58.) On that date, the Court discussed with IPI portions of the discovery order that were complied with and not complied with; nonetheless, the Court was convinced by the end of the hearing that IPI still failed to comply with the Court's discovery order and therefore found IPI in contempt for a second time. (Min., ECF No. 73.) Despite finding IPI in contempt, the Court gave IPI another opportunity to comply with its discovery orders but issued only the lesser sanctions of attorney's fees against it. (*Id*.)

At a status conference held the following month on April 8, 2021, the Court found that IPI still had not complied with the Court's discovery order that had been pending for more than six months. Given IPI's continued discovery violation and having considered the parties' submissions, counsels' arguments, and the entirety of IPI's discovery conduct, the Court ordered an entry of default against IPI as a sanction. (Min., ECF No. 79.) The Court issued a written order the following day directing that IPI's answer be stricken and that default be entered against IPI in Case Nos. 1:19-cv-00008 and 1:19-cv-00020. (Order Striking Answer and Entering Default, ECF No. 80.) A more

detailed procedural history and explanation for the Court's entry of default is contained in a memorandum decision issued on October 12, 2021. (Mem. Decision, ECF No. 138.)

After the entry of default, Gray apprised the court of an intent to file a motion of waiver of privilege, and IPI gave notice that it was intending to file a motion for reconsideration. (Min., ECF No. 87.)  Both parties filed their motions, and the matters were fully briefed. However, at the motions hearing held on June 3, 2021, the Court denied without prejudice IPI's motion for reconsideration (ECF No. 92) given its failure to reference a proper rule and support its motion by affidavits and other forms of admissible evidence. (Min., ECF No. 108.) The Court gave IPI leave to refile its motion no later July 8, 2021. (*Id*.) At the motion hearing, the Court also granted Plaintiff's motion for waiver of privilege. (*Id*.; Order on Waiver of Privilege, ECF No. 119.)

IPI filed its amended motion to vacate entry of default, this time citing to Rule 55(c) of the Federal Rules of Civil Procedure (Mot., ECF No. 111), supported by declarations of counsel Stephen Nutting (Nutting Decl., ECF No. 112) and IPI human resources employee Redie Dela Cruz (Cruz Decl., ECF No. 113), as well as numerous exhibits (ECF Nos. 112-1 to 112-47; ECF Nos. 113-1 to 113-8). Plaintiff filed his opposition (Opp'n, ECF No. 122), and IPI filed its reply (Reply, ECF No. 130).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." The Ninth Circuit has held that the factors derived from the "good cause" standard that governs the lifting of entries of default under Federal Rule of Civil Procedure 55(c) also governs the vacating of a default judgment under Rule 60(b). *Franchise Holding II, LLC v. Huntington Rest. Grp. Inc.*, 375 F.3d 922, 925 (9th Cir. 2004) (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141 (2001)).

These three factors are the *Falk* factors, which consider: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has [no] meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam). "This standard . . . is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

However, the *Falk* factors considerations are guided by two policy concerns: that relief from default judgment is "remedial" and therefore must be "liberally applied," and that "judgment by default is a drastic step appropriate only in extreme circumstances," since "a case, should, whenever possible, be decided on the merits." *Falk*, 739 F.2d at 463. "[D]efault judgments [or entries of default] are the exception, not the norm, and should be viewed with great suspicion." *United States v. Aguilar*, 782 F.3d 1101, 1106 (9th Cir. 2015). Thus, while a party seeking relief bears the burden of showing these factors favor setting aside default, *Franchise Holding II, LLC*, 375 F.3d at 926, that burden is "not extraordinarily heavy," *TCI Grp.*, 244 F.3d at 700.

However, the Ninth Circuit has held that "[e]ven if the other relevant factors—the merits of the defendant's defenses and the prejudice to the plaintiff—would favor setting aside a default judgment, we have held that the trial court's denial of a motion to vacate a default judgment will be affirmed if the defendant's own culpable conduct prompted the default." *Akkelian v. Gevorkyan*, 833 F. App'x 467, 468 (9th Cir. 2021) (internal quotation marks and citation omitted).

## III.    DISCUSSION

### 1)  <u>Whether Defendant has a meritorious defense</u>

The Court will first discuss the meritorious defense factor, as this is the *Falk* factor that IPI primarily depends upon for vacating entry of default. IPI asks the Court for the opportunity for it to prove the merits of the case.

To justify setting aside the entry of default, the movant "ha[s] to present the district court with specific facts that would constitute a defense . . . . A mere general denial without facts to support it is not enough to justify vacating a default or default judgment." *Franchise Holding*, 375 F.3d at 926 (internal quotation marks omitted). "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094. The veracity of those factual allegations is not a question on a motion to set aside default. *Id.*; *see also Aguilar*, 782 F.3d at 1107 ("[T]he question whether the factual allegation [i]s true is not to be determined by the court when it decides the motion to set aside the default. Rather, that question would be the subject of the later litigation." (internal quotation marks and citation omitted)). Satisfying the meritorious defense requirement is particularly important because "[i]f . . . the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening judgment." *Aguilar*, 782 F.3d at 1106 (quoting *TCI Grp.*, 244 F.3d at 697).

A great portion of IPI's motion to vacate is dedicated to establishing that Gray was terminated for non-discriminatory reasons, specifically due to cost-cutting measures; that he was the last of the employees of hotel operations to be fired; that there were no hotel operations to oversee as Gray alleges; and that his tasks were not taken over by Lucy (Yuping) Guo, but rather by Henan Ma, an Asian, United States citizen.[1] (Mot. at 1-15.) Taking these facts as true, as the Court must do at the motion to set aside default stage, then IPI's argument that Gray was terminated for economic reasons does constitute a potential defense to Gray's retaliation-based wrongful termination, section 1981 racial discrimination, and Title VII claims.

---

[1] This is consistent with one of the affirmative defenses that IPI alleged in its answer: "This Complaint and each purported claim contained therein, is barred in whole or in part because all decisions with respect to Plaintiff's employment were made by Defendant for legitimate, non-discriminatory, non-pretextual reasons." (Affirmative Defenses ¶ 4, ECF No. 23.)

For example, Gray's wrongful termination claim requires him to show "that retaliation was a motivating factor in the dismissal decision[.]" *See Chung v. World Corp.*, 2005 WL 1459674, at *4 (D. N. Mar. I. June 22, 2005) (citing 82 Am. Jur. 2d Wrongful Discharge § 55 (2003)). To establish a claim under section 1981, he would have had to "prove that he . . . was subjected to intentional discrimination based upon his or her race," *Pavon v. Swift Transp. Co.*, 192 F.3d 902, 908 (9th Cir. 1999), and show that "but for race, [he] would not have suffered the loss of a legally protected right," *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media, et al.*, 140 S. Ct. 1009, 1019 (2020). But a valid economic-based reason for termination would potentially refute those claims. Even under Gray's Title VII status-based discrimination claim under the Civil Rights Act of 1991, "'an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.'" *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348-49 (2013) (quoting 42 U.S.C. § 2000e-2(m)). However, IPI is correct in its statement of the law that where: "'[the employer] demonstrates that [it] would have taken the same action in the absence of the impermissible motivating factor, the court—(i) may grant declaratory relief, injunctive relief . . . and [limited] attorney's fees and costs . . . ; and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment . . . . '" *Id.* (quoting 42 U.S.C. § 2000e-5(g)(2)) (alterations in original). Thus, even if the fact finder were to find that race played a motivating factor in Gray's termination, if IPI could prove that it would have fired Gray anyway for non-discriminatory reasons, it would not be liable for monetary damages or a reinstatement order. (*See* Mot. at 15-18.)

This time, unlike its first motion to vacate, IPI points to admissible evidence through depositions of its current or its former employees demonstrating its defense that Gray was terminated due to cost-cutting measures. For example, in the deposition of Donald Browne, IPI's

former Chief Executive Officer (CEO), Browne testified in response to a question regarding massive layoffs that:

> It began after Typhoon Yutu, and systematically, it went down as, you know, layoffs were on both side. Majority on hotel and hotel support side. After, it became very evident that we would, maybe, never open a hotel, we began to pluck off, or just identify down the line, what positions we don't need. We kept the more valuable people, such as Mr. Gray who ended up as our last man standing in hotel operations uh, as an executive, and uh after the typhoon, after it was evident that we didn't – weren't going to get a hotel, we began to give people some work, so they wouldn't be laid off.

(Browne Dep. 52:22–53:2, Ex. 1 to Nutting Decl. ¶ 3, ECF No. 112-1.)

Moreover, when asked why Gray was terminated rather than Henan Ma, who IPI argues took over Gray's position rather than Lucy Guo, Browne's response was that: "Henan could, because of the time spent managing those couple of little things, she could dedicate the rest of her time to her other duties and responsibilities, which were still very many. And, also would be the major interpreter for Mr. Brown who does not speak Mandarin." (*Id*. at 35:2–35:6.) Browne further stated that Mandarin was "absolutely a necessity" to give progress reports to upper management on the hotel. (*Id*. at 35:15–35:19.)

IPI also includes excerpts from a deposition conducted of Henan Ma, who translated for prior CEO Mark Brown and who eventually took on hotel operations. (Ma Dep., Ex. 3 to Nutting Decl. ¶ 5, ECF No. 112-3.) Ma testified that:

> So, for this, what I remember regarding this, from the very beginning, they want everybody – everybody, all the executives to letting go, from the hotel operation. Mark, uh, did recommend to the board, to Hong Kong, said, we should keep someone, at least one, for the hotel operation, and Mark also let all the other people go. So Mark let, like kept Joshua. And then after, because that cut and save is a different, like times, like the first time a group of people go. The second time, a group of people go. So when we got to the point, like by the end, and then I remember Joshua was the last one on the organization chart from hotel operation, but then the Hong Kong, the board informed Mark that they cannot, they don't see any day, like any months soon, any – they soon, the hotel will open. They cannot afford for, uh, like a big level – the salary. I don't remember how much and

7

1
2
3

> I don't know how much Joshua making, but I know that's uh, like uh, executive level, like a salary, so they cannot, like just a keep paying that money without the hotel opening. So, that is how about that.

4

(*Id*. at 63:22–64:9.)

5

IPI employees Magdalena Attao and Redie Dela Cruz also testified to similar cost-cutting

6

measures. (*See* Attao Dep. 46:15–46:18, Ex. 2 to Nutting Decl. ¶ 4, ECF No. 112-2 ("[T]here was

7

nothing wrong with the – the separation of Mr. Josh Gray in this particular case. There was no hotel

8

operating. We were looking at cost cutting measures. We were letting go of a lot of executives and

9

a lot of rank and mid-level and rank-and-file staff."); Cruz Dep. 98:6–98:7, Ex. 4 to Nutting Decl.

10

¶ 6, ECF No. 112-4 ("For the hotel operations, I recall a discussion about not having a hotel

11

operating per se, and so that's why they were on that list to get laid off.").) That Gray was one of

12

the last in hotel operations fired is also supported by human resources documents provided by Cruz.

13
14

(*See* Master List of Hires and Separations, Ex. 6 to Cruz Decl. ¶ 6, ECF No. 113-6.)

15

In response, while Gray does attach text messages from IPI's former counsel that mentions

16

Gray in the context of race, Gray's opposition fails to essentially address the merits of IPI's defense.

17

(*See* Opp'n at 28.) At the motion hearing, counsel for Gray also stated that IPI probably has a

18

meritorious defense, but that this factor is irrelevant given that the other *Falk* factors weigh heavily

19

against IPI. When the Court further pressed counsel for Gray on this issue at the hearing, counsel

20

indicated that they had their own evidence in support of Gray's claims, but that it would be provided

21
22

at the default judgment stage.

23

In light of IPI's facts regarding its non-discriminatory termination of Gray with attached

24
25

admissible evidence, the Court finds that the meritorious defense *Falk* factor weighs in favor of IPI

26
27
28

8

for setting aside entry of default.[2] To be clear, however, given that the Court must accept the facts as true at this stage, the Court is making no actual findings as to whether IPI's defense is meritorious.

### 2)  <u>Whether culpable conduct of Defendant led to the default</u>

Another *Falk* factor considers whether the culpable conduct of the defendant led to the default. *Falk,* 739 F.2d at 463. The Court analyzes this factor next because it weighs the heaviest against IPI.

"'[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer.'" *TCI Grp.*, 244 F.3d at 697. Under this standard, the Ninth Circuit has interpreted intentional as "willful, deliberate, or evidence of bad faith." *Id*. at 697 (internal quotation marks and citation omitted). "[W]e have typically held that a defendant's conduct was culpable for purposes of the *Falk* factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id*. at 698. "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' under our default cases." *Id*. at 697. Neglectful failure to answer "is therefore not *necessarily*—although it certainly may be, once the equitable factors are considered—culpable or inexcusable." *Id*. at 697-98 (emphasis in original). Furthermore, where a defendant is sophisticated and represented by counsel, *Phiten Co., Ltd. v. Gutos*, 2012 WL 13006193, at *2 (C.D. Cal. Feb. 2, 2012), the Ninth Circuit employs the sophisticated party standard that presumes intentionally: "When considering a legally

---

[2] The Court therefore makes no determinations as to whether IPI would succeed on a motion for summary judgment, if filed.

sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality," *Mesle*, 615 F.3d at 1093.

Here, IPI contends that it did not act in bad faith or with a willful or deliberate intent to not produce discovery. (Mot. at 21.) IPI argues that its conduct is distinguishable from that in *Adriana International Corporation v. Thoeren*, 913 F.2d 1406, 1412-14 (9th Cir. 1990), where the plaintiff failed to cooperate in discovery and failed to produce any documents other than minimal documents in over a year.  In contrast, IPI posits that it sat through various hearings regarding discovery, made substantial and good faith efforts to produce discovery, produced seven witnesses for depositions, spent countless hours searching for responsive documents, and never refused to comply with Court orders on discovery. (Mot. at 23-25; *see also* Mafnas Decl., ECF No. 112-43; Yumul Decl., ECF No. 112-44; Benson Decl., ECF No. 112-45; Cruz Decl., ECF No. 112-47.) It highlights that it did produce all USCIS documents requested, provided excel sheets regarding the human resources training documents, and in good faith tendered to Plaintiff the ESI data in a manner that it believed Plaintiff wanted it. (Mot. at 25-26.)

The Court, however, disagrees with IPI's contentions. While true that IPI's conduct does not pale to same extent of culpability as that in *Adriana* given that IPI did engage in efforts in discovery, that IPI's conduct was not *as* culpable does not entirely negate its culpability. *See Adriana*, 913 F.2d at 1412-14. In reviewing and outlining the extensive procedural history of this case over the discovery issue in its memorandum decision on the entry of default against IPI pursuant to Rule 37, which the Court need not repeat here, the Court found that "IPI's repeated failure to tender complete discovery over the course of nine months was clearly within its own control and that IPI's repeated delays demonstrates bad faith." (Mem. Decision at 10, ECF No. 138.)  The Court reasoned that Gray has actively sought discovery materials from IPI since July 2020, but even after the Court became involved and set new deadlines for IPI to comply, IPI failed

1    to abide by the terms. (*Id*.) Moreover, after numerous hearings and status conferences, it became

2    apparent to the Court that IPI possessed documents in its control that it could have tendered much

3    earlier to Gray, such as the list of employees to be terminated. (*Id*.) As to ESI, the Court noted that:

4
5           Even more troubling is IPI's production of ESI. For example, while
            ESI was sought since July 2020, IPI's own IT Brandon Benson, was
6           not contacted for the first time until on February 24, 2021—nearly
            five months after when discovery was initially due and nearly two
7           weeks after the Court's February 11, 2021 deadline for IPI to
            identify its ESI sources. (Min., ECF No. 56.) In the interim, IPI had
8           computers from former employees that were merely sitting in
            storage that could have been searched through, as each computer
9           had an inventory number that could be traced to an employee.
            (Hasselback Decl. ¶¶ 19-21, ECF No. 72.) Then, when the Court
10          gave IPI a deadline of March 18, 2021 to produce ESI documents to
            Gray (OSC Min., ECF No. 73), IPI only produced its documents in
11          an unorganized and incoherent manner, and without any sort of
            privilege log produced.
12

13   (Mem. Decision at 11.) The history of this case clearly demonstrates that IPI's own culpable

14   conduct led to default. Even nearly one year later, the Court is still firm in its belief that IPI's bad

15   faith contributed to its own default.

16
17          IPI's failure to comply with the Court's discovery deadlines is further highlighted by IPI's

18   own failed arguments in the pending motion. IPI suggests that it did tender the USCIS applications

19   for directors and above as requested by Gray. (Mot. at 25.) But its own attached excel spreadsheet

20   that it references in its motion and its own exhibits of the USCIS applications attached to the instant

21   motion only show USCIS CW-1 renewals for 2017 and/or 2018—not the requested original

22   applications starting from 2015 that Gray has been requesting.[3] (*See* Ex. 9-A to 9-Z-7 to Nutting

23   Decl. ¶ 11, ECF Nos. 112-9 to 112-41; List of Directors and Above, Ex. 7 to Nutting Decl. ¶ 9,

24
25
26
27   _____

28   [3] IPI's excel spreadsheet list of the directors and above show that Ms. Guo joined IPI starting June 2015, while many
     of the other employees joined IPI in 2016. (Ex. 7, ECF No. 112-7.)

ECF No. 112-7). That IPI's counsel at the motion hearing on September 30, 2021 still could not certify compliance with the Court's discover orders is very telling.

Furthermore, as to ESI data, IPI contends that the "data dump" was in a format it believed Gray's counsel wanted. But counsel wanting the ESI data to be collected as it should have been long before and preserved with its meta-data does not mean that counsel wanted ESI produced in an incoherent and disorganized fashion, with no responsiveness to relevance, and in an unsearchable format. (*See* Ex. D to Berline Decl. ¶ 5, ECF No. 124-4.) Nor does counsel's wish that IPI collect its ESI data absolve IPI of its discovery duties to produce ESI in compliance with the Federal Rules of Civil Procedure. Even when counsel for Gray had concerns regarding IPI's data dump at the status conference held on March 31, 2021, IPI made no further efforts subsequent to that hearing to alleviate Gray's concerns. Shockingly, IPI's counsel even admitted one week later that he never even looked at the ESI contained in the hard drives that were tendered to Gray.

The Court also agrees with Gray that given that IPI is a large, sophisticated corporation[4] that has conducted extensive business investments in Saipan, the Court could presume intentionality. (Opp'n at 13.) This is not the first time that entry of default pursuant to Rule 37 has been entered against IPI due to discovery abuse. *See* Am. Mem. Decision Striking IPI's Answer and Entering Default Under Rule 37, *Wang v. Gold Mantis, et. al.*, No. 1:18-cv-00030 (D. N. Mar. I. July 17, 2020), ECF No. 193. For the reasons set forth above and previously in the Court's memorandum decision entering default against IPI (ECF No. 138), as well as by the fact that IPI is a sophisticated corporation, the Court finds that IPI's own culpable conduct led to the entry of default. This factor weighs strongly against IPI for the setting aside of the entry of default.

/

---

[4] IPI's own exhibit indicates that as of 2018, IPI's gross annual income was $964,763,809 with a net annual income of $184,266,883.  (Ex. 9-A at 4, ECF No. 112-9.)

**3)  Prejudice to the Plaintiff**

The final factor that a court considers on whether to set aside default is whether the plaintiff will be prejudiced. *Falk*, 739 F.2d at 463. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Grp.*, 244 F.3d at 701. "[M]erely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting default" as vacating default "merely restores the parties to an even footing in the litigation." *Id.* Thus, "the ordinary cost of litigating is simply not cognizable under *Falk*'s prejudice factor." *Id.*  Rather, "'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" *Id.* (quoting *Falk*, 739 F.2d at 463) (alteration in original).  The delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion. *See id.* (citing *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)).

IPI argues that Gray would not be prejudiced because it would merely need to prove its case, and because Gray has in its possession over 1 terabyte of ESI data as well as thousands of physical documents including USCIS applications that IPI tendered. (Mot. at 20-21.) IPI also argues that Gray should not be rewarded for engaging in a "fishing expedition," as in having no support for its claims and then using discovery to fish for evidence. (Mot. at 26-27.)

In opposition, Gray argues that he is prejudiced due to the loss evidence, increased difficulties in discovery, and loss of assets.  (Opp'n at 19-23.) Gray highlights that Brandon Benson stated in his declaration that key IPI personnel have already left or have been furloughed, and some key individuals' phones have already been wiped clean. (Benson Decl. ¶¶ 10-12, ECF No. 70-1.) These include the phones of key individuals such as Mark Brown, Viola Alepuyo, and others whose phones would have likely contained highly relevant evidence. (Opp'n at 21.) Furthermore, Gray argues that because IPI refuses to file a declaration explaining what discovery has not yet been produced or has been lost, Gray does not know the full extent of the loss of evidence. (*Id.* at 20.)

1   Given IPI's conduct shown to date, Gray also argues that setting aside default would result in

2   persistent difficulties to obtain all discovery from IPI. (*Id*. at 22.) As to loss of assets, Gray notes

3   that IPI is facing multiple writs from other judgment creditors, such that Gray is prejudiced if IPI's

4   assets are sold off during the pendency of this case. (*Id*. at 23.)

5

6          The Court finds that this factor does not weigh in favor of either parties. On one hand, IPI's

7   own employee has attested to the loss of ESI data due to employees having left and/or data having

8   been wiped, deleted, or moved—such that Gray does suffer from loss of evidence. On the other

9   hand, Gray is not without any discovery materials. Gray has received physical documents through

10  the discovery process and has received over 1 terabyte of ESI data—with a benefit of a waiver of

11  privilege on the ESI data.  The Court granted Gray's motion for waiver of privilege on August 13,

12  2021, and permitted "Plaintiff [to] use the ESI in any way that is reasonably necessary for the

13  prosecution of his case." (Order on Waiver of Privilege at 4, ECF No. 119.) Based on that waiver,

14  Gray has been able to locate some damaging evidence in support of its arguments,[5] as highlighted

15  in his opposition. For example, Gray was able to locate text messages between Viola Alepuyo and

16  former counsel Kelly Butcher, where Butcher states, "Per ji and our new chair mama ji … 'why is

17  the fat black guy still there?! he does nothing!!'" (Ex. A to Gray Decl. ¶ 19(a); ECF No. 123-1.)

18  Plaintiff also located a text message between Butcher and Mark Brown discussing how to

19  restructure Gray's position/salary so that they can "have a stronger legal argument in the future if

20  he tries to present a claim . . ." (Ex. B to Gray Decl. ¶ 19(b), ECF No. 123-2.) Another message

21  chain between former counsel Phillip Tydingco and Butcher jokes about the potential basis of

22  Gray's suit – "You think it's gonna be a discrimination? On what?? Fat and black??" (Ex. C to

23

24

25

26

27

28

[5] IPI argues that these text messages would not be admissible under Federal Rules of Evidence 403, 407, and 408. (Reply at 6 n. 5.) The Court at this time makes no determinations as to the admissibility of the text messages.

Gray Decl. ¶ 19(c), ECF No. 123-3.)  Thus, Gray has been able to receive evidence, with the added benefit that the privileged documents are waived and could be used.

Furthermore, while it is true that IPI is subject to multiple writs, that all of its assets will be gone by the time—if and when—Gray gets a judgment is unlikely. To date, IPI has taken tremendous efforts to delay the sale of its assets subject to the receivership by posting bonds. *See, e.g.,* Decision and Order Granting Def.'s Mot. to Stay*, U.S.A. Fanter Corp. v. Imperial Pac. Int'l (CNMI), LLC*, No. 1:20-cv-00003 (D. N. Mar. I Jan. 4, 2022), ECF No. 222; Order Granting Stipulation and Modifying Prior Order, *Ping Shun Corp. v. Imperial Pac. Int'l (CNMI), LLC*, No. 1:20-cv-00012 (D. N. Mar. I Feb. 11, 2022), ECF No. 88; Order Granting Stipulation to Stay Enforcement Pending Appeal, *Wang*, No. 1:18-cv-00030 (D. N. Mar. I. Feb. 22, 2022), ECF No. 505.

Rather, the Court finds that most of the prejudice Gray faces derives from delay in the cost of litigation, which is not the type of harm considered for purposes of vacating default. Furthermore, without knowing all the substance of the ESI data's contents, Gray is unable to show prejudice from any of the lost evidence. Nonetheless, IPI's bad faith cannot be rewarded with no consequences and at the cost of Gray. Accordingly, the Court finds that a <u>conditional</u> grant is appropriate in this situation, as it upholds the policy preference in allowing IPI to pursue its defense on the merits while mitigating any prejudice to Gray due to IPI's own culpable conduct if the Court were to set aside entry of default. *See Falk*, 739 F.2d at 463 ("The trial court . . . has the power to impose conditions on the scope of the reopened suit to prevent prejudice.").  The Court will describe the required conditions IPI must meet in the following section.

## IV.   CONDITIONAL GRANT

In *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1546 (9th Cir. 1988) (per curiam), which Gray relies on, the Ninth Circuit affirmed the district

court's conditional grant of setting aside entry of default. In *Nilsson*, the Ninth Circuit discussed whether it was appropriate for the district court to condition the setting aside of defaults on the payment of plaintiff's attorneys' fees and requirement that defendants completely and promptly respond to all discovery and obey the federal and local rules. *Id*. at 1546. The Court held that such conditioning was appropriate, as "the district court judge in the instant case was attempting to facilitate discovery and was protecting the non-defaulting party by not requiring the plaintiff to pay for its costs." *Id*. at 1546-47. The court reasoned that "[b]y conditioning the setting aside of a default, any prejudice suffered by the non-defaulting party as a result of the default and the subsequent reopening of the litigation can be rectified." *Id*. at 1546 (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2700 (1983)).  Furthermore, given that the "common type of prejudice is the additional expense caused by the delay, the hearing on the Rule 55(c) motion, and the introduction of new issues," some courts have generally employed conditions such as requiring the defaulting party to provide a bond to pay costs, to pay court costs, or to cover the expenses of the appeal. *Id*.  The court in *Nilsson* found that requiring the defendant to reimburse plaintiff for costs incurred because of the default or posting a bond to secure the amount of the default judgment pending trial were appropriate conditions. *Id*.

Here, the Court likewise finds that a conditional grant is more appropriate and balances both the opportunities to allow IPI to proceed on defending itself on the merits while mitigating any harm caused to Gray as a result of IPI's willful delay and noncompliance. Given the history of IPI's conduct, not only in this case but in numerous other cases before this Court, the Court also has grave doubts about whether IPI will truly comply with discovery if the Court were to fully set aside entry of default. Therefore, the Court CONDITIONALLY GRANTS IPI's motion to set aside entry of default, and will only set aside the default upon <u>timely</u> satisfaction of <u>all</u> the following conditions:

1.  IPI must produce to Gray, through his counsel, all outstanding discovery requests, including the remaining USCIS documents requested, within **two weeks** of this order. If documents do not exist, then IPI must declare that those documents do not exist, and the Court will issue a Rule 37(b) sanction that designated facts be taken as established for purposes of the action.

2.  As to ESI data, IPI must engage with an ESI vendor and place its ESI on that platform no later than **thirty days** from the date of this order, which is no later than **April 29, 2022**.

3.  IPI must post a supersedeas bond no later than **thirty days** from the date of this order in the amount of $155,000, equivalent to one year of Gray's salary at the time of termination (ECF Nos. 113-3, 113-8), to secure some form of judgment amount pending trial on the merits.

4.  IPI must pay Gray attorney's fees and costs for having to litigate the motion to vacate, the prior motion for reconsideration, the motion for privilege, as well as any fees and costs resulting from IPI's failure to comply with discovery orders not previously awarded. Plaintiff shall file a petition no later than two weeks from this order, and IPI shall file a response, if any, no later than one week thereafter. The Court will thereafter issue an order on the appropriate amount, and IPI shall pay the amount within **one week** after the Court's issuance of the order.

**Upon completion of these conditions, counsel is to file a certification of compliance**. The Court will thereafter order that the entry of default be fully set aside and that IPI's Answer to the Second Amended Complaint in 19-cv-00008 (ECF No. 23) and Answer to the Complaint in 19-cv-00020 (ECF No. 5) be reinstated. Failure to comply with these conditions will result in the denial

of IPI's motion, the entry of default remaining, and the matter proceeding to a default judgment hearing.

## V.    CONCLUSION

It is with great reluctance and hesitation that the Court issues its decision today due to the numerous violations of this Court's discovery orders. But in light of the policy preference for deciding cases on the merits, IPI's more recent efforts to comply with discovery, and allegations of a meritorious defense, the Court finds that IPI has shown good cause pursuant to the *Falk* factors and therefore CONDITIONALLY GRANTS IPI's motion to set aside entry of default on the terms set forth above.

IT IS SO ORDERED this 30th day of March, 2022.

RAMONA V. MANGLONA
Chief Judge