Bruce Berline
BERLINE & ASSOCIATES, LLC
Second Floor, Macaranas Building
PO Box 5682 CHRB
Saipan, MP 96950
Tel: (670) 233-3663
Fax: (670) 233-5262
Email: bruce@saipanlaw.com

Aaron Halegua
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, New York 10012
Tel: (646) 854-9061
Email: ah@aaronhalegua.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOSHUA GRAY,<br><br>Plaintiff,<br><br>v.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>Defendant. | Case No. 19-cv-0008<br><br>**DECLARATION OF AARON HALEGUA IN SUPPORT OF APPLICATION FOR WRIT OF EXECUTION ON IPI'S PERSONAL PROPERTY**<br><br>Hearing Date: n/a<br>Hearing Time: n/a<br>Judge: Hon. Ramona V. Manglona |

I, AARON HALEGUA, hereby declare:

1. I am over eighteen years of age and am fully competent to testify to the facts set forth in this declaration. I, along with Bruce Berline, represent Plaintiff in this action.

2. I am submitting this declaration in support of Plaintiff's Application for a Writ of Execution on Imperial Pacific International (CNMI), LLC's ("IPI") Personal Property (the "Application").

1

3. Mr. Berline and I also represented seven workers in another case against IPI before this Court, *Wang v. Gold Mantis Construction Decoration (CNMI), LLC*, No. 18-0cv-0030 ("*Wang*").

4. In the *Wang* action, after a judgment for $5,430,595.58 was issued against IPI, on July 13, 2021, the Court issued the *Wang* plaintiffs a writ of execution against IPI's personal property, including but not limited to its computer hardware, furniture and equipment, gaming equipment, motor vehicles, and two crystal dragons. (*Wang*, ECF No. 362). The plaintiffs in the cases *Ping Shun v. IPI*, No. 20-cv-0012 ("*Ping Shun*") (ECF No. 55) and *U.S.A. Fanter v. IPI*, No. 20-cv-0003 ("*Fanter*") (ECF No. 110) also obtained similar writs of execution against some or all of those assets. The U.S. Marshals ("Marshals") executed upon these writs of execution on July 20, 2021. However, the judgments in all of those actions have now been satisfied.

5. Plaintiff now seeks a writ of execution against IPI's Vehicles, IPI's Liquor, IPI's Dragons, IPI's Computer Hardware, IPI's Furniture and Equipment, and IPI's Casino-Related and Security Equipment, as those terms are defined herein.

6. **IPI's Vehicles.** The motor vehicles that were the subject of the *Wang* plaintiffs' writ of execution were identified in various lists of assets provided by IPI—namely a "List of Assets" (*Wang*, ECF No. 352-1) and the attachment to a Declaration of Frances Mafnas, Treasury Director for IPI, dated December 9, 2020 (*Wang*, ECF No. 352-3). An additional list has been provided by Fanter as part of its more recent application for a writ of execution in another matter against IPI. *U.S.A. Fanter v. IPI*, No. 21-cv-0035 ("*Fanter II*"), ECF No. 35-4. The cars and heavy equipment described in these various lists is hereinafter referred to as "IPI's Vehicles." In *Fanter II*, the Court noted that while the Kelly Blue Book value of the cars was calculated to be $1,051,304.00, the actual value today is likely far less. (*Fanter II*, ECF No. 37). Nonetheless, the cars may still auction for an amount in excess of Fanter's $226,127.05 judgment in that matter.

7. **IPI's Liquor.** The Marshals also executed upon the liquor that IPI was storing in a wine cellar in the casino (hereinafter, "IPI's Liquor") and the *Wang* plaintiffs installed a lock outside the wine cellar to prevent any theft or tampering, which has since been returned to the Court. (*See Wang*, ECF No. 592). An expert in the field of alcoholic beverages, who the *Wang* plaintiffs first took to inspect

2

the wine cellar in September 2021, confirmed that IPI's liquor collection is decreasing in value as it sits in the wine cellar without any temperature control. (*See Wang*, ECF No. 538-2). In May 2022, he estimated that if things went well, perhaps the liquor could be auctioned for $600,000. (*Id.*). He viewed the liquor again in February 2023 and now estimates that it could perhaps be auctioned for $100-200,000, but admits that it is hard to know without starting to actually open some of the boxes.

8. **IPI's Dragons.** IPI confirmed that it is the owner of the two crystal dragons hanging in the IPI casino (hereinafter, "IPI's Dragons"). *See Stewart v. IPI*, No. 19-cv-0007, ECF No. 49; *see also Wang*, ECF No. 352-2. The aforementioned documents suggest that the original price of the dragons may have been approximately $10 million. However, my conversations with experts in auctioning art of this type suggest that the proceeds from auctioning the dragons—after deducting the cost of labor needed to disassemble them, pack and ship them, and reassemble them, as well as the auctioneer's fee—would *at best* only be a few million. Moreover, the degree to which the dragons have been damaged since the casino was closed is still unknown; for instance, the LED lighting system may require significant repair.

9. **IPI's Computer Hardware.** The List of Assets provided by IPI's attorney, *Stewart v. IPI*, No. 19-cv-0007, ECF No. 43 (filed again in *Wang*, ECF No. 352-1) and the list of assets provided by Frances Mafnas (filed as *Wang*, ECF No. 352-3) both contain lists of computer hardware belonging to IPI (together, "IPI's Computer Hardware"). At the time of her declaration, on December 9, 2020, Mafnas stated that the "net book value" of this hardware was $692,404.47. (*Wang*, ECF No. 352-3 at 14). Yet, given the fact that much of this equipment likely can no longer be found or may no longer work, I expect that the actual resale value of this category of equipment today is far less.

10. **IPI's Furniture and Equipment.** The List of Assets provided by IPI's attorney, *Stewart v. IPI*, No. 19-cv-0007, ECF No. 43 (filed again in *Wang*, ECF No. 352-1) and the list of assets provided by Frances Mafnas (filed as *Wang*, ECF No. 352-3) both contain lists of furniture and equipment hardware belonging to IPI (together, "IPI's Furniture and Equipment"). The term IPI's Furniture and Equipment shall also include any other furniture, equipment, or similar personal property in IPI's casino, villas, or warehouses, including but not limited to mattresses, pianos, art, and portable generators. At the

time of her declaration, on December 9, 2020, Mafnas stated that the "net book value" of the listed furniture and equipment was $2,348,230.40. (*Wang*, ECF No. 352-3 at 44). Yet, given the fact that many of these items likely can no longer be found or the equipment may no longer work, I expect that the actual resale value of this category of equipment today is far less. Moreover, some of the furniture contained in these lists may have already been sold as part of the auction of casino equipment.

11. **IPI's Casino-Related and Security Equipment.** The Court established a Limited Receivership in the *Fanter* case to sell IPI's gaming equipment. (*Fanter*, ECF No. 166). The scope of that equipment appears to include all gaming equipment identified during an inspection of IPI's property (*id.* at 14), various gaming assets listed by IPI previously (*id.*, ECF No. 109 at 62-64 (Ex. B); *Wang,* ECF No. 352-1 at 37-76)). There seemed to be less clarity as to whether the security equipment owned by IPI is within the scope of the Limited Receivership. Therefore, recognizing that many of these items may be subject to the Limited Receivership but that there may be some which are not, Plaintiff seeks a writ of execution as to the gaming equipment items listed in *Fanter*, ECF No. 109 at 62-64 (Ex. B) and *Wang,* ECF No. 352-1 at 37-76) (hereinafter, "IPI's Casino-Related and Security Equipment").

12. The total resale value of the items for which Plaintiff seeks a writ of execution are expected to be less than the total value of Plaintiff's judgment, to which interest, attorneys' fees and costs must still be added. The most valuable cars will most likely be sold by Fanter, the remaining value of the liquor has largely declined, the dragons are very difficult and expensive to sell, and the most valuable gaming equipment will be sold by the Limited Receivership. Moreover, in the event that the sale of the personal property identified by Plaintiff herein generates sufficient funds to satisfy Plaintiff's judgment, then the further sale of any of IPI's assets may be stopped.

I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York on the 2nd day of July, 2023.

_____/s/_____
Aaron Halegua
Attorney for Plaintiff