Bruce Berline
BERLINE & ASSOCIATES, LLC
Security Title Building
Isa Drive, Capitol Hill
P.O. Box 5682
Saipan, MP 96950
Tel: (670) 233-3663
Fax: (670) 233-5262
Email: bruce@saipanlaw.com

Aaron Halegua
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, New York 10012
Tel: (646) 854-9061
Email: ah@aaronhalegua.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOSHUA GRAY,<br><br>                    Plaintiff,<br><br>                    v.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>                    Defendant. | Case No. 19-cv-0008<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S PETITION FOR AN ORDER TO SHOW CAUSE AGAINST IPI AND HOWYO CHI**<br><br>Hearing Date: n/a<br>Hearing Time: n/a<br>Judge: Hon. Ramona V. Manglona |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………………………………………………….. ii

I.   BACKGROUND ……………………………………………………………………. 2

II.  ARGUMENT …………………………………………………………………….....… 4

    A.   IPI should be found in contempt of Court for disobeying the Court's Order ….………….... 4

    B.   Howyo Chi should be found in contempt for IPI's failure to comply with the Order ……... 6

    C.   IPI should be ordered to compensate its creditors for the property lost due to its
       noncompliance, and to pay a daily fine until it comes into compliance with the Order …..... 8

       1.   IPI should compensate Plaintiff for the liquor stolen due to its noncompliance …..…..… 9

       2.   IPI should pay a $10,000 per day fine until it complies with the Order,
          and if it still fails to comply, Howyo Chi should be incarcerated until IPI complies ….. 10

    D.   IPI should be ordered to pay Plaintiff's reasonable attorneys' fees and costs
       incurred in enforcing compliance with the Order ……………..…………………………….. 11

III. CONCLUSION …………………………………………………………………………… 12

# TABLE OF AUTHORITIES

**Cases**

*Am. Nat'l Red Cross v. World Inst. of Safety LLC*, No. 19-cv-2310,

    2020 WL 5913239 (D. Md. Oct. 5, 2020) ………………………………………………… 11

*Bademyan v. Receivable Mgmt. Servs. Corp.*, No. 08-cv-00519,

    2009 WL 605789 (C.D. Cal. Mar. 9, 2009) ………………………………………………….. 10

*Fed. Trade Comm'n v. Hold Billing Servs., Ltd.*, No. SA98CA0629FBHJB,

    2014 WL 12873039 (W.D. Tex. Apr. 4, 2014) …………………………………………… 9

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128 (9th Cir. 2001) ………..... 8

*F.T.C. v. Affordable Media*, 179 F.3d 1228 (9th Cir. 1999)…………………....……..…… 4, 6

*F.T.C. v. EDebitPay, LLC*, 695 F.3d 938 (9th Cir. 2012) ……………………………..…........... 9

*F.T.C. v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) ………………………………………...... 9

*In re Count Liberty, LLC*, 370 B.R. 259 (Bankr. C.D. Cal. 2007) ………………………………….. 7

*In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361 (9th Cir. 1987) …………....…....……… 4, 9

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993) ……..….. 4, 6

*In re Dyer*, 322 F.3d 1178 (9th Cir. 2003) …………………………………………………….. 8, 9

*In re Norrie*, No. 13-BK-25751-BR, 2016 WL 6407839 (B.A.P. 9th Cir. Oct. 26, 2016) ………… 11

*In re Sula, Inc.*, No. 215-BK-23350-WB,

    2016 WL 3960513 (Bankr. C.D. Cal. July 15, 2016) ………………………..…….…..... 7, 11

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*,

    774 F.3d 935 (9th Cir. 2014) ……………………………………..….……..… 6, 7, 8

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) …………………………………........................ 6, 9

*Morgutia-Johnson v. City of Fresno*, No. 1:14-cv-00127-LJO-SKO,

   2015 WL 1021123 (E.D. Cal. Mar. 9, 2015) ……………………………………………. 10

*Regal Knitwear Co. v. NLRB*, 324 U.S. 9 (1945) ……………………………...…....…………. 7

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) ………………….. 10

*SEC v. Hickey*, 322 F.3d 1123 (9th Cir. 2003) ……………………………………………………… 8

*Trustees of Heating, Piping & Refrigeration Pension Fund v. Clean Air Mech., Inc.*,

   No. 17-cv-3690, 2020 WL 6395292 (D. Md. Nov. 2, 2020) ………………………………. 11

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947) …………………………… 8, 10

*Wang v. IPI*, No. 18-cv-0030 (D. N. Mar. I. Feb. 11, 2021) …………………………………..... 10, 11

*Wilson v. United States*, 221 U.S. 361 (1911) ……………………………………………...….6, 8

**Statutes**

18 U.S.C. § 401 ……………………………………………………………………………………… 9

After Plaintiff Joshua Gray ("Gray") obtained a judgment against Defendant Imperial Pacific International (CNMI), LLC ("IPI"), the Court issued a writ of execution against IPI's Personal Property and Plaintiff executed on this writ. On October 23, 2023, the Court issued an Order Appointing Clear Management Limited as Limited Receiver for the Sale of IPI's Personal Property (ECF No. 275, the "Order"). The Order required, *inter alia*, that "IPI shall ensure and fund the security of IPI's Personal Property until it is sold by the Limited Receiver and delivered to the buyer. Within fourteen (14) days of the filing of the inventory list by the Receiver, IPI shall file with the Court a sworn declaration and supporting evidence demonstrating its compliance with this provision." (*Id*. ¶ 16). IPI did not comply with the Court's directive to file such declaration, let alone ensure the security of IPI's Personal Property. In or around November or December, 2023, several bottles of McCallan whiskey were stolen from the IPI casino in Garapan (the "Casino"). Thereafter, IPI neither filed the required declaration nor ensured adequate security. In or around February 2024, after IPI's liquor had been auctioned, 17 bottles of Moutai—an expensive Chinese rice wine—were stolen from the Casino. Even then, IPI made on effort to comply with the Court's Order. Only when Plaintiff insisted that IPI comply did IPI finally file such declaration. (ECF No. 289 ("IPI Declaration")). However, the filed declaration is still inadequate and IPI has refused to supply additional details.

In light of IPI's demonstrated disregard for this Court's authority, the loss suffered from IPI's failure to comply with the Order, and the risk of theft created by IPI's continued failure to comply, Plaintiff requests that this Court issue an order to show cause ("OSC") why the Court should not issue an order (i) holding IPI in contempt, (ii) holding Mr. Howyo Chi in contempt; (iii) directing IPI to compensate Plaintiff for the liquor stolen from the Casino; (iv) imposing a daily fine of $10,000 until IPI complies, and incarcerating Mr. Chi if IPI's noncompliance persists; and (v) directing IPI to pay Plaintiff's reasonable attorneys' fees and costs resulting from its disobedience. Plaintiff's request for

1

an OSC is supported by the Declaration of Aaron Halegua, dated April 7, 2024 ("Halegua Decl."), and the Declaration of Christopher Craney, dated April 8, 2024 ("Craney Decl.").

## I. BACKGROUND

Long before the Court issued Plaintiff a writ of execution on August 16, 2023 (ECF No. 231), the parties knew that a deliberate effort would be needed to ensure the security of IPI's Personal Property. (Halegua Decl. ¶ 7). Many of these items were located in the Casino, which had no electricity or security equipment, and which has numerous possible entrances and exits. (*Id.* ¶ 5). Indeed, many items had been stolen from the Casino and IPI's warehouses even prior to the Order. (*Id.* ¶¶ 3–4, 6). Therefore, as part of its Order concerning IPI's Personal Property, issued on October 23, 2023, the Court mandated IPI to both take steps to ensure the security of such items as well as file a sworn declaration and supporting evidence to show that it has in fact complied. (Order ¶ 16). IPI blatantly disregarded this Order. Instead of establishing adequate security and reporting that arrangement to the Court by the first week in November, 2023, IPI provided totally inadequate security and two bottles of expensive McCallan whiskey were taken from the Casino. (*Id.* ¶¶ 8–9, 17). Despite IPI being aware of this theft, it continued to ignore the Court's Order. Accordingly, after Clear Management sold IPI's liquor (already discounted for the stolen whiskey) and the Court approved the sale (ECF No. 287), 17 bottles of Moutai liquor were then stolen from the casino. (*Id.* ¶¶ 11–12). The purchaser of IPI's Liquor alleges the market price of the missing Moutai is $100,000 and is requesting a credit in this amount. (*Id.* Ex. E). Even after the theft of McCallan and Moutai, IPI persisted in refusing to ensure adequate security or file the declaration with the Court.[1] (*Id.* ¶¶ 17, 21–23; Craney Decl. ¶¶ 5–8).

---

[1] Clear Management filed its inventory list on November 10, 2023. (ECF No. 282). Therefore, IPI was obligated to file its sworn declaration and supporting evidence no later than November 24, 2023.

2

On March 7, 2024, Plaintiff, Clear Management, and another judgment creditor of IPI, U.S.A. Fanter, sent a letter to IPI's counsel noting its pattern of noncompliance with the Order on IPI's Personal Property as well as the Court's on liquidating IPI's Vehicles. (Halegua Decl., Ex. G). For instance, IPI had been found to be using a drill to remove pieces of art subject to the writ, IPI's affiliate bid on the liquor and then refused to pay, and IPI continued driving vehicles around the island months after it was ordered to turn over the keys. (*Id.* at 1–2). The letter also noted that IPI had neither provided adequate security at the Casino nor filed the declaration and supporting evidence required by the Order, and further stated that if IPI did not come into compliance by March 11, 2024, the parties would move to hold IPI and its principals in contempt. (*Id.* at 2).

On March 12, 2024, IPI filed the Declaration of Natividad Cabrera (ECF No. 289 ("Cabrera Decl.")). The two-page, seven-paragraph declaration describes the theft of the McCallan bottles and the Moutai liquor with minimal detail. In terms of describing what steps IPI has taken to actually ensure the security of items in the Casino, there are only two paragraphs, which state that IPI has hired three additional security guards, the "premises" are under "constant surveillance," and Ms. Cabrera has been given authority by "IPI management" to hire extra personnel "if deemed necessary to prevent further theft." (*Id.* ¶¶ 6–7). Plaintiff sent an email to IPI the same day noting that the Cabrera Declaration does not comply with the Court's Order to establish through a sworn declaration and supporting evidence that IPI has ensured the security of IPI's Personal Property. (*See* Halegua Decl., Ex. H). One week later, on March 19, 2024, IPI emailed Plaintiff in response, but only stated that IPI has 11 "full-time" staff, IPI "typically [has] 2 to 3 security officers on duty," IPI is aiming to have three at all times, and that IPI has no "predefined budget" for hiring additional staff. (*Id.*). That same day, Plaintiff emailed IPI back requesting further details, such as an actual schedule, description of what the security guards do while "on duty," where they are stationed, and how the current measures

3

would have prevented the thefts that occurred. (*Id.*). IPI never provided responses to these questions or any further details. (Halegua Decl. ¶ 23).

## II.  ARGUMENT

**A.  IPI should be found in contempt of Court for disobeying the Court's Order.**

A finding of contempt is appropriate when a party disobeys "a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). *See F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply."). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *Id.* (*quoting In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)).

The Order is specific and definite in requiring IPI to both ensure the security of IPI's Personal Property as well as to file a sworn declaration and supporting evidence of this fact within fourteen days of Clear Management filing its inventory. The obligation to "ensure and fund the security of IPI's Personal Property" took effect immediately. Yet, IPI did not comply. Instead, IPI maintained inadequate security which allowed two bottles of expensive McCallan whiskey to be stolen. Thereafter, IPI still did not increase its security staff, close off certain entrances/exists, install security equipment, or take the steps necessary to ensure security of its property. (Halegua Decl. ¶¶ 10–12, 17, 21; Craney Decl. ¶¶ 5–8, 19–20, Exs. C, D). Instead, IPI tried (without any legal authority), multiple times, to rewrite the Court's Order and place the burden for security on Clear Management. (*See, e.g.,* Cabrera Decl. ¶ 3; Halegua Decl. Ex. H). Thus, in or around February 2024, after the Court approved the sale of IPI's Liquor, IPI's lax security permitted 17 bottles of Moutai liquor to be removed from the casino.

(Craney Decl. ¶¶ 20–23). The mere fact that these bottles were stolen provides sufficient evidence that IPI did not comply with the Order to ensure security of its personal property.

The fact that IPI failed to file a sworn declaration and supporting evidence of its compliance is a stand-alone violation of the Order. Since Clear Management filed its inventory list on November 10, 2023 (ECF No. 282), IPI was obligated to file these materials by November 24, 2023. IPI filed *nothing* with the Court until March 12, 2024—more than three months later. Thus, its failure to comply with this aspect of the Court's Order is indisputable. Moreover, IPI's failure to provide the Court with a sworn statement stating that it complied with the Order is further evidence that IPI was not in compliance with the Court's mandate.

In addition, even after March 12, 2024, IPI still has not complied with the Order to ensure security of IPI's Personal Property or to file a "a sworn declaration and supporting evidence demonstrating its compliance" with the order to "ensure and fund the security of IPI's Personal Property." (Order ¶ 16). Most critically, the declaration submitted by IPI never states that the security arrangement it has put in place is adequate. Other than to state that IPI hired "three additional security guards" and that the "premises" is "under constant surveillance, 24 hours a day[,] 7 days a week," IPI literally provides zero detail about the actual security arrangement. What areas are part of the "premises"? Is it only the Casino building or does it include the many warehouses; does it include the garage; which entrances or exists have security? And, if the casino is now under "constant surveillance," what was the arrangement previously? Plaintiff's understanding is that IPI already had "24/7" security; the problem is that there was only one or two guards at a time. (Craney Decl. ¶ 5). Why did IPI determine that hiring more guards could provide adequate security and that installing security cameras is not necessary? IPI was provided an opportunity by Plaintiff to provide these details, but it has not done so. Moreover, there can be no dispute that IPI has failed to provide "supporting evidence

5

demonstrating its compliance" with the Order; indeed, IPI has provided *no* supporting evidence at all. Therefore, it is indisputable that IPI has still failed to comply with the Order.

IPI certainly has not and can not meet its burden of showing that it "took all reasonable steps" to comply with the Order, *In re Dual-Deck*, 10 F.3d at 695, let alone that it demonstrated this fact "categorically and in detail," *Affordable Media*, 179 F.3d at 1241, because IPI still has not even informed the Court of what precise steps it has taken since the issuance of the Order. *See Kelly v. Wengler*, 822 F.3d 1085, 1096–97 (9th Cir. 2016) (affirming order of contempt against defendant who failed take *all* reasonable steps to comply with order). Instead, as it has done throughout this litigation and others, IPI had the power to comply with the Court's directive but chose not to. In fact, although not necessary to find IPI in contempt, the evidence shows that IPI has engaged in a pattern of behavior to obstruct the liquidation of its property and defy the Order. (*See* Halegua Decl. ¶¶ 15–20, Exs. F, G). Therefore, IPI should be held in contempt for failing to ensure and fund the security of IPI's Personal Property, and for failing to provide the declaration and supporting evidence directed by the Court.

**B. Howyo Chi should be found in contempt for IPI's failure to comply with the Order.**

Where a court has ordered a corporation to act, the officers have a duty to take the necessary steps to comply with that order, and their failure to do so may result in a finding of contempt against those individuals. *See Wilson v. United States*, 221 U.S. 361, 376 (1911) ("A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt."); *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 955 (9th Cir. 2014) ("The law is clear that those who control an organization may be held liable if they fail to take appropriate action to ensure compliance

6

with an injunction."). "A party may also be held liable for knowingly aiding and abetting another to violate a court order." *Id.* at 945 (*citing Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)). *See also In re Sula, Inc.*, No. 215-BK-23350-WB, 2016 WL 3960513, at *2-6 (Bankr. C.D. Cal. July 15, 2016) (imposing contempt sanctions on principals of debtor-corporation who were aware of court order to vacate the property but "fail[ed] to take appropriate action to timely surrender possession"); *In re Count Liberty, LLC*, 370 B.R. 259, 276, 286 (Bankr. C.D. Cal. 2007) ("When the debtor is a corporation, the debtor in possession's fiduciary obligations to the corporation, its creditors and shareholders, fall upon the officers and directors.").

Here, Mr. Chi was officially responsible for IPI's compliance with the Order. Mr. Chi has been employed by IPI since at least 2014 and serves as its executive director. (*See* Declaration of Howyo Chi, *IPI v. CNMI*, No. 24-cv-0001, ECF No. 24 ("Chi Decl.") ¶ 2). Newspaper stories and his own sworn declarations evidence that he is playing the primary role for IPI, and speaking on behalf of IPI, in its most critical matters, such as settlement discussions with the CCC and Governor Palacios about the revocation of IPI's license, the notice of default issued regarding IPI's lease, the recent $20 million capital infusion, IPI's alleged reopening plan, and IPI's payment of "millions of dollars" to settle lawsuits. (*See id.* ¶¶ 53, 56–59, 61, 65; Halegua Decl. ¶¶ 28–30, Exs. J, K, L).

While Mr. Chi's general control of IPI is adequate to hold him in contempt, the evidence also establishes that Mr. Chi was personally aware of the writ and Order, and that he had control over matters relating to IPI's security and compliance with the Order. For instance, when confronted with pictures of IPI using blow torches to take apart the metallic sphere/egg in the Casino lobby, Mr. Chi stated that he did not know it was subject to the writ. (Halegua Decl., Ex. F). When Plaintiff moved to appoint Clear as the limited receiver, Mr. Chi submitted a declaration in opposition, arguing that Clear had damaged the Casino floor and that IPI owed $11 million to Century Estate. (*See* ECF No. 261-3;

7

Halegua Decl. ¶ 16). Mr. Chi was also clearly aware of the liquor auction. After Century Estate asked if it could submit a bid on "credit," it was Mr. Chi who followed up with Michael White on the matter. (*Id.* ¶ 27, Ex. I). Whenever IPI's security guards had a question or needed guidance, they would contact Mr. Chi. And, if Clear had a question that the security guards themselves could not handle, Clear would communicate with Mr. Chi. (Craney Decl. ¶¶ 15, 24).

In conclusion, because Mr. Chi is IPI's executive director, he knew about the Order, and he did not act to ensure compliance with the Order, the Court should hold him in contempt. *Sea Shepherd*, 774 F.3d at 955. Mr. Chi has clearly failed to "take appropriate action within their power for the performance of the corporate duty" required by the Court. *Wilson*, 221 U.S. at 376.

### C. IPI should be ordered to compensate its creditors for the property lost due to its noncompliance, and to pay a daily fine until it comes into compliance with the Order.

If a lawful order or command is disobeyed, a district court has "the power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority…." 18 U.S.C. § 401. In the case of civil contempt, any penalties "must either be compensatory or designed to coerce compliance." *In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003) (*citing F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1137–38 (9th Cir. 2001)). *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947) (explaining sanctions in civil contempt may be issued to "compensate the complainant for losses sustained" or to coerce compliance). In shaping particular remedies, the Ninth Circuit has held that "[d]istrict courts have broad equitable power to order appropriate relief in civil contempt proceedings." *F.T.C. v. EDebitPay, LLC*, 695 F.3d 938, 945 (9th Cir. 2012) (*quoting SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003)). In this case, the equitable result is that IPI both (i) compensate its creditors for the property lost as a result of its noncompliance, and (ii) pay a daily fine of $10,000 until it complies with the Order so that further property is not damaged or stolen.

8

1. <u>IPI should compensate Plaintiff for the liquor stolen due to its noncompliance.</u>

The first component of an equitable sanction for IPI's violation of the Order is to compensate IPI's creditors for the value of the property lost as a result of its noncompliance. *See In re Dyer*, 322 F.3d at 1195 (compensation is valid civil contempt sanction). In this instance, the stolen liquor was subject to a writ executed by Plaintiff and therefore it is more appropriate that the compensation be paid to Gray rather than in the form of a fine to the Court. *See In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d at 1366–67 (ordering defendant to compensate complainant for interest accrued as a result of defendant's violation of court order); *Kelly*, 822 F.3d at 1097 (contempt sanction designed to put plaintiff in position they would be in but for defendant's contempt); *EDebitPay*, 695 F.3d at 945 (defendant who violated court order should compensate consumers to make them whole).

Here, the purpose of the Order was to protect the property that was subject to Plaintiff's writ of execution while it was inventoried and liquidated, and the harm of IPI's noncompliance was felt by Plaintiff. Accordingly, an appropriate and equitable civil contempt sanction is for IPI to make Plaintiff whole for the damage caused by its noncompliance.

As for the appropriate measure of damages, "[w]hile contempt liability must be proven by clear and convincing evidence, damages may be proven by a preponderance of the evidence." *Fed. Trade Comm'n v. Hold Billing Servs., Ltd.*, No. SA98CA0629FBHJB, 2014 WL 12873039, at *21 (W.D. Tex. Apr. 4, 2014) (*citing F.T.C. v. Kuykendall*, 371 F.3d 745, 751 (10th Cir. 2004)). The Macallan whiskey that was stolen is available for purchase on the internet at $4,499.99 to $6,699.99 per bottle. (Halegua Decl. ¶ 13). The winning bidder of the liquor auction estimates the value of the Moutai at $100,000 and is seeking a credit in this amount to be applied in IPI's vehicle auction. (*Id*. ¶ 14, Ex. E). Accordingly, it is equitable that IPI pay this amount, or whatever other amount is required to satisfy Leader Capital's claim for a reimbursement.

2. <u>IPI should pay a $10,000 per day fine until it complies with the Order, and if it still fails to comply, Howyo Chi should be incarcerated until IPI complies.</u>

The Court has the power to impose a civil contempt sanction that is designed to encourage IPI to comply with its Order. *United Mine Workers of Am.*, 330 U.S. at 303–04; *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992). In determining an appropriate sanction, "the court must 'consider the character and magnitude of the harm threatened by continued contumacy, and the probabl[e] effectiveness of any suggested sanction in bringing about the desired result.'" *Morgutia-Johnson v. City of Fresno*, No. 1:14-cv-00127-LJO-SKO, 2015 WL 1021123, at *3 (E.D. Cal. Mar. 9, 2015) (*quoting Bademyan v. Receivable Mgmt. Servs. Corp.*, No. 08-cv-00519, 2009 WL 605789, at *3 (C.D. Cal. Mar. 9, 2009)). In this instance, both considerations weigh in favor of a severe sanction. The harm threatened by IPI's noncompliance is enormous. IPI's Personal Property—which includes Rolls Royce's and dozens of other vehicles, the crystal dragons, other art, and furniture and equipment—is likely worth millions of dollars. If that property is stolen or damaged, the value obviously disappears or decreases. As for the effectiveness of the sanction, a significant fine is necessary to motivate IPI. While IPI often claims to lack any resources, the company clearly has access to vast resources. As soon as IPI was threatened with a contempt motion, it suddenly had the money to hire more security guards. (Cabrera Decl. ¶¶ 5–6). More significantly, IPI has publicly proclaimed that it just received a $20 million infusion of cash. (Chi Decl. ¶ 53). Therefore, IPI will not be persuaded by a fine of a few thousand dollars per day. *See Wang v. IPI*, No. 18-cv-0030 (D. N. Mar. I.), ECF No. 290 (issuing an order to show cause why IPI's Chairwoman Lijie Cui should not be held in contempt and a daily sanction of $10,000 imposed).

Since monetary sanctions alone may be insufficient to compel IPI to comply with the Order, Plaintiff further requests that the Court instruct IPI and its principals, including Mr. Chi, that continued

disobedience will result in even more severe contempt sanctions, up to and including incarceration. *See In re Norrie*, No. 13-BK-25751-BR, 2016 WL 6407839, at *7 (B.A.P. 9th Cir. Oct. 26, 2016) (affirming incarceration of party who failed to comply with discovery requests). *See Trustees of Heating, Piping & Refrigeration Pension Fund v. Clean Air Mech., Inc.*, No. 17-cv-3690, 2020 WL 6395292, at *2 (D. Md. Nov. 2, 2020) (incarcerating party where "experience indicates that monetary penalties alone will be insufficient to coerce compliance"). Indeed, in another case before this Court against IPI, *Wang v. IPI*, No. 18-cv-0030, it took the threat of incarceration of IPI's principals and officers before compliance was achieved. (*See Wang*, ECF No. 282). *See also Am. Nat'l Red Cross v. World Inst. of Safety LLC*, No. 19-CV-2310, 2020 WL 5913239, at *2 (D. Md. Oct. 5, 2020) ("[e]xperience indicates that simply imposing an additional fine on [defendant] may be insufficient to coerce compliance, as the members who manage [defendant] seem comfortable ignoring orders directed at [the company]"). Therefore, Plaintiff specifically requests that the Court order that if IPI does not comply with the Order within ten (10) calendar days of being held in contempt, that Mr. Chi be incarcerated until IPI is found to be in compliance.

### D. IPI should be ordered to pay Plaintiff's reasonable attorneys' fees and costs incurred in enforcing compliance with the Order.

The Court may award the payment of attorneys' fees and costs as a compensatory civil contempt sanction. *In re Sula,* 2016 WL 3960513, at *4. IPI's disobedience has already caused Plaintiff to expend a substantial number of attorneys' hours, including but not limited to time spent addressing the stolen McCallan liquor, addressing the stolen Moutai, drafting letters and engaging in correspondence with IPI, meeting with security consultants, and preparing this motion.

### III.  CONCLUSION

For the foregoing reasons, the Court should issue an OSC why IPI and Mr. Chi should not be held in contempt and direct IPI to respond within seven (7) days since there is a risk of theft or damage to IPI's Personal Property each day that IPI fails to provide adequate security. In order to assist the Court, Plaintiff is sending a proposed OSC to the Clerk via email.

Respectfully submitted,

_____/s/_____
Aaron Halegua
Bruce Berline

Attorneys for Plaintiff