1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stephen J. Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950
Michael Chen
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117
Pro Hac Vice

*Attorneys for IPI (CNMI) LLC*

## IN THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN MARIANA ISLANDS

JOSHUA GRAY,

      **Plaintiffs,**

      **v.**

IMPERIAL PACIFIC INTERNATIONAL
(CNMI), LLC,

      **Defendant**

Case No. 1:19-cv-00008

**DEFENDANT'S RESPONSE TO
ORDER TO SHOW CAUSE AGAINST
IPI AND HOWYO CHI**

Hearing Date: April 30, 2024
Hearing Time: 10:00 AM
Judge: Hon. Ramona V. Manglona

## DEFENDNATS' MEMORANDUM OF LAW IN RESPONSE
## TO ORDER TO SHOW CAUSE AGAINST IPI AND HOWYO CHI

### I.    STATEMENT OF RELEVANT FACTS

     After Plaintiff Joshua Gray ("Gray") obtained a judgment against Defendant Imperial

Pacific International (CNMI), LLC ("IPI"), the Court issued a writ of execution against IPI's

Personal Property and Plaintiff executed on this writ. On October 23, 2023, the Court issued an

Order Appointing Clear Management Limited as Limited Receiver for the Sale of IPI's Personal

**MICHAEL CHEN LAW OFFICE**
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com | Call: 626.249.2002x

Property (ECF No. 275, the "Order"). The Order required, *inter alia*, that "IPI shall ensure and fund the security of IPI's Personal Property until it is sold by the Limited Receiver and delivered to the buyer. Within fourteen (14) days of the filing of the inventory list by the Receiver, IPI shall file with the Court a sworn declaration and supporting evidence demonstrating its compliance with this provision." (*Id*. ¶ 16).

On November 3, 2023, Clear Management moved the Court to modify this portion of the Order to permit Clear Management to file an initial inventory list by November 10, 2023, but then to later file a supplemental inventory list on December 6, 2023, and additional lists as become necessary thereafter. (Motion for Modification, ECF No. 279).

On November 5, 2023, the Court issued an Order granting the motion for modification of order appointing receiver, the Court ordered, *inter alia*, "Specifically, Clear Management shall file an initial inventory list on or before November 10, 2023, which will then be subject to the procedures set forth in Paragraph B.4 of the Receivership Order— including that IPI shall have seven (7) days to file any objections to the inventory and will waive any objections by failing to do so. Clear Management shall then file a supplemental inventory list on or before December 6, 2023, which shall also be subject to the procedures set forth in Paragraph B.4 of the Receivership Order, including time for objections." (ECF No. 280).

On November 10, 2023, Clear Management filed the initial inventory list and stated "the Receiver will file a supplemental inventory list on or before December 6, 2023." (ECF No. 282).

At the time of the filing of this Response to OSC, Clear Management has not yet complied with the Court's specific order to file the supplemental inventory list, in spite of its own commitment to do so.

Around November 2023, staff from Clear Management obtained the key to the liquor storage and began conducting an inventory of the liquor. Clear Management staff informed IPI's security guard that they had court authorization to sell IPI's assets and that IPI must do what Clear Management asked them to do in all matters, including the liquor.

After Clear Management obtained the key to the liquor vault, they began to take control of the liquor for them to conduct inventory. Clear Management did not allow any of IPI's staff and security guards to get even close to the liquor.

After Clear Management had the physical custody of the liquor, they did not coordinate with IPI to secure the liquor in terms when Clear Management staff would be coming and leaving, and when the liquor would be left unattended and what IPI's security guards are supposed to do when/if the liquor were left unattended.

On November 27, 2023, IPI was informed by Clear Management that two Macallan were missing from the casino lobby floor.

IPI immediately discussed with Clear Management to secure the remaining liquor. In response, Clear Management staff took control of the liquor and stored it in an office behind Tapochau Bar on the IPI gaming floor. They removed the padlock previously placed by IPI and installed their own padlock, preventing anyone from IPI to have access to the liquor. Clear Management has the only keys to the padlock where the remaining liquor were stored.

On January 24, 2024, after overruling IPI's request to extend the sale in order to entertain additional higher bids, Court approved a joint petition by Plaintiff and Clear Management to sell entire IPI's liquor of 5,633 bottles for $250,316.00. (ECF No. 283-1, ECF No. 286). The average price of the liquor is $44.44 USD per bottle.

On February 26, 2024, IPI was informed by Clear Management that another 17 bottles of Moutai were stolen from the storage room where Clear Management had the exclusive access to.

On March 12, 2024, without the benefits of knowing when the supplemental inventory list might be filed by the Limited Receiver, at the request of the counsel for Plaintiff, counsel for IPI stipulated with Plaintiff's counsel to file the declarations prior to March 12 before 10 AM Saipan time. (ECF No. 290-2, at 42).    IPI did file the declarations on time per stipulation. (ECF No. 288, 289).

Since the closure of casino operations in March 2020, IPI has had very limited resources and no income. To maintain security at Imperial Pacific Resort, IPI has been borrowing funds to

pay the current security guards. IPI has great difficulties in finding a lender who is willing to extend any credit to IPI to cover its ongoing operating expenses.

IPI has no fund in its bank accounts. IPI has no liquid assets other than assets which are under the control of Clear Management.

IPI is paying $8.25 USD per hour for the security guard, it would cost at least $47,520 USD to hire eight security guards 24/7 for 30 days. IPI has no financial resources to fund this level of security.

## ARGUMENT

### A.  The Only Party Who Disobeyed a Specific and Definite Court Order is Clear Management.

A finding of contempt is appropriate when a party disobeys "a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig*., 10 F.3d 693, 695 (9th Cir. 1993). See *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply."). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." Id. (quoting *In re Crystal Palace Gambling Hall, Inc*., 817 F.2d 1361, 1365 (9th Cir. 1987)).

"But a person should not be held in contempt if his action '"appears to be based on a good faith and reasonable interpretation of the [court's order].'" *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc*., 689 F.2d 885, 889 (9th Cir. 1982) (quoting *Rinehart v. Brewer*, 483 F. Supp. 165, 171 (S.D. Iowa 1980).   "Substantial compliance" with the court order is a defense to civil contempt, and is not vitiated by "a few technical violations" where every reasonable effort has been made to comply. 689 F.2d at 891; see also *General Signal Corp. v. Donallco, Inc*., 787 F.2d

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

1376, 1378-79 (9th Cir. 1986)." See *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, at 695.

When the Court issued its Order Appointing Clear Management as the Limited Receiver, (ECF No. 275), it mandated IPI to "file with the Court a sworn declaration and supporting evidence demonstrating its compliance with this provision" within 14 days of the filing of the inventory list. It is clear that IPI's obligation to file a sworn declaration and supporting evidence is triggered by the filing of the inventory list by the Receiver.

Upon the motion by Clear Management, the Court allowed Clear Management to file an initial inventory list by November 10, 2023, and a supplemental inventory list on December 6, 2023, as well as additional inventory lists as necessary. (ECF No. 280). Clear Management is under a specific and definite order to file the supplemental inventory list by December 6, 2023. The Court even used the word "specifically" when it addressed Clear Management's obligations to file the initial and supplemental reports with specific dates. (ECF No. 280 at 2, Line 14).

In its Motion to Modify the Order Appointing Limited Receiver (ECF No. 279), Clear Management stated it would not be possible for it to do a thorough inventory by November 6, 2023, and that subject property may be spread out over multiple locations on Saipan, including some "unexpected places."

On November 10, 2023, when Clear Management filed the initial inventory report, it reaffirmed its obligation to "file a supplemental inventory list on or before December 6, 2023."

The modified Order did not address the timing when IPI needs to file a sworn declaration and supporting evidence to demonstrate its compliance given the fact that there might be multiple inventory lists filed by the Limited Receiver; nor the modified Order addressed whether IPI needs to file a sworn declaration and supporting evidence each time when Clear Management files an inventory list.

There are only twenty six (26) days between the filing of the initial inventory list and December 6, 2023, which is the scheduled filing date of the first supplemental inventory list as ordered by the Court and confirmed by Clear Management of its own filing, it is a reasonable

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

interpretation by IPI to file the sworn declaration and supporting evidence after the filing of the first supplemental inventory list, because IPI's compliance plan would be contingent upon what and where the subject inventories are. Given the modified Order, it is unreasonable to ask IPI to provide a sworn declaration and supporting evidence immediately after the initial inventory list is filed, knowing a supplemental inventory list is due in less than twelve (12) days.

Should Clear Management indicate that it would not file a supplemental inventory list, or the date for the filing of a supplemental inventory list is unknown or in a distant future date, it might be reasonable to ask IPI to file the sworn declaration and supporting evidence within 14 days of the filing of the initial inventory list. But that is not the case here. Notwithstanding the specific court order and its own reconfirmation, Clear Management failed to file the supplemental inventory list on or before December 6, 2023, there is no "specific and definite" court order that IPI could disobey. The only party that disobeyed a "specific and definite" court order is Clear Management.

**B. The Alleged Loss of the Liquor was not Due to the Security Measures Provided by IPI since Clear Management had Exclusive Control over the Liquor.**

Under the Order, IPI must "perform any other action reasonably requested by the Limited Receiver." (ECF No. 275, ¶15 d.)

For the alleged loss of two bottles of Macallan, based upon the declaration by Mr. Christopher Craney, the loss occurred between November 23, 2023, and November 27, 2023. Clear Management already took possession and exercised exclusive custody over the liquor by removing them from the liquor vault to the casino lobby. Clear Management did not allow IPI's security guards to get close to the liquor while they were "conducting inventory" and did not coordinate with the security guards on when they will be coming or leaving and when the liquor will be left unattended.

Therefore, the alleged loss of the two bottles of Macallan was not caused by the alleged inadequate security provided by IPI, it would make no difference how many security guards were on duty since they are not allowed to interfere with what Clear Management was doing

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com | Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

with the liquor. To put it simply, the risk of loss is shifted to Clear Management when they took possession of the liquor and exercised exclusive custody of the liquor. That is not what the Court order envisioned.

For the alleged loss of Moutai, the case is even stronger. Clear Management exercised exclusive custody over the liquor by replacing the padlock on the door for the liquor storage room.

Mr. Craney speculated that the Moutai was stolen by unscrewing the hinge, opening the door, and then replacing the hinge.

A more plausible way for the Moutai to be stolen is by someone who has access to the locked storage room with a key to the changed padlock, remove the Moutai one bottle at a time.

It remains a mystery how the 17 bottles of Moutai were stolen from the locked storage room where Clear Management has exclusive access to, and the lock was not cut or broken (ECF No. 290-3, ¶23, Decl. of Craney), without establishing the causal link between the alleged loss of the liquor and the alleged inadequate security by IPI with clear and convincing evidences, it is a mere groundless speculation to fix the blame on IPI for the alleged loss of the 17 bottles of Moutai.

The cause of the loss of the liquor may never be known, to ask IPI to compensate Plaintiff for the loss of the liquor is to ask IPI to be the insurer of the loss, that is beyond the scope of the Court Order where IPI is asked to provide security only.

**C.  IPI Has Done Everything Possible to Comply with the Court Order.**

Under the settled law, "When it becomes the duty of a court of equity to take property under its own charge through a receiver, the property becomes chargeable with the necessary expenses incurred in taking care of and saving it, including the allowance to the receiver for his services." See *Elk Fork Oil & Gas Co. v. Foster*, 99 F. 495, *499 (4th Circuit, 1900), *Strain v. Palmer,* 159 F. 628 (9th Cir. 1908). When a receiver is appointed, the expenses incurred in taking care of the property, such as the security costs, shall be chargeable to the subject property.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com | Call: 626.249.2002x

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Although IPI respectfully disagrees with the Court's order to fund the security of the subject property, IPI has done everything possible to comply with that order by borrowing funds to provide security.

IPI is an independent and distinct legal entity, IPI is a limited liability company formed under the law of CNMI, it is responsible for its own legal obligations to the extent of its assets. IPI can only fulfill its legal obligations, including complying with the Court Order, from its own assets. The Court has been consistently applying this principle by denying multiple requests from judgment creditors to ask IPI to provide insurance for its vehicles that were subject to writs of execution.

A finding of contempt is appropriate when a party disobeys "a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). IPI has exhausted all available assets within its control and even borrowed funds in order to comply with the court order, IPI has taken all reasonable steps within its power to comply with the Court's order to fund the security of the subject property. IPI reserves the right to petition the Court to order the Limited Receiver and the Plaintiff to reimburse the costs for providing security, which benefits the Plaintiff only.

The mere possibility that a third party, including the parent company of IPI, its shareholders, officers, and directors may chip in to help IPI financially from time to time is not a ground to find IPI in contempt if IPI is unable to convince such third party to extend a loan to cover certain expenses when IPI itself cannot do so with its own assets.

### D. Mr. Howyo Chi Has Done Everything Within His Power to Comply with the Court Order.

Mr. Chi is the executive director of IPI. Mr. Chi is not personally liable for the debt of IPI. To the extent IPI has taken all reasonable steps within its power to comply with the Court's order to provide and fund the security of the subject property, there is no ground to hold Mr. Chi personally liable for the alleged contempt.

**E.  The Value Assigned to the Alleged Lost Liquor is Grossly Inflated.**

On January 24, 2024, after overruling IPI's request to extend the sale in order to entertain additional higher bids, Court approved a joint petition by Plaintiff and Clear Management to sell entire IPI's liquor of 5,633 bottles for $250,316.00. (ECF No. 283-1, ECF No. 286). The average price of the liquor is $44.44 USD per bottle.

It is quite remarkable for Plaintiff to take an inconsistent position at this juncture to assign $4,499.99 to $6,699.99 per bottle for the Macallan and $100,000 for the 17 bottles of Moutai when the entire 5,633 bottles were sold for $250,316.00. This request is frivolous.

## II.  <u>CONCLUSION</u>

For the foregoing reasons, the Court shall deny the requests made by Plaintiff in his Petition for an Order to Show Cause against IPI and Mr. Chi.

Dated:  April 16, 2024
Saipan, CNMI

Respectfully submitted,

By:<u>/s/ Stephen Nutting</u>
Stephen Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950

Michael Chen
By: <u>/s/ Michael Chen</u>
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117
Pro Hac Vice

Attorneys for Defendant
IMPERIAL PACIFIC INTERNATIONAL
(CNMI), LLC

**MICHAEL CHEN LAW OFFICE**
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x