F I L E D
 Clerk
 District Court
JUL 15 2024
for the Northern Mariana Islands
By_____JP_____
         (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

JOSHUA GRAY,

    Plaintiff,

v.

IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,

    Defendant.

Case No. 1:19-cv-00008

**DECISION AND ORDER GRANTING FIFTH PETITION FOR ATTORNEYS' FEES**

    Before the Court is Plaintiff Joshua Gray's Fifth Petition for Attorneys' Fees Against Defendant Imperial Pacific International (CNMI), LLC ("IPI") (Pet., ECF No. 239)[1] supported by several declarations: Attorney Aaron Halegua (Halegua Decl., ECF No. 239-1), Attorney Bruce Berline (Berline Decl., ECF No. 239-2), Rita M. Celis (Celis Decl., ECF No. 239-3), Attorney Monique Olivier (Olivier Decl., ECF No. 239-4), and Attorney Janet E. Hill (ECF No. 239-5). IPI filed an opposition (Opp'n, ECF No. 240) with various billing excerpts (ECF Nos. 240-1–240-5) to which Gray replied to (Reply, ECF No. 249) with the second declarations of Halegua (Second Halegua Decl., ECF No. 249-1) and Berline (Second Berline Decl., ECF No. 249-2). For the reasons detailed

---

[1] The Court references the page numbers identified by CM/ECF, located in the header of the document and generated by the CM/ECF filing system.

1

herein, the Court GRANTS Gray's Fifth Petition for Attorneys' Fees in the amount of $255,647.64 for legal services and costs.[2]

## I. PROCEDURAL HISTORY

Gray filed his Second Amended Complaint against IPI alleging wrongful termination in violation of public policy and 42 U.S.C. § 1981, and requesting actual and punitive damages. (ECF No. 19 at 5-7.) The Court consolidated the instant case with a related case, *Gray v. Imperial Pacific International (CNMI), LLC*, 1:19-cv-00020. (Order Consolidating Cases, ECF No. 26.) In that case, Gray alleged IPI discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 and requested actual damages. (Title VII Compl., ECF No. 1 *in* 1:19-cv-00020.) As sanctions for failure to comply with discovery orders, this Court granted Gray attorneys' fees four separate instances. (ECF Nos. 74, 109, 161, 162.) Subsequently, the Court granted default judgment for "§ 1981 racial discrimination claim, claim of wrongful termination in violation of public policy, and Title VII discrimination and retaliation claims" and awarded Gray $5,686,182.20 plus attorneys' fees and costs. (Decision Granting Default J. 39-40, ECF No. 225.) On May 31, 2023, judgment was entered in favor of Gray against IPI (J., ECF No. 226.)

After Gray filed this Petition, the Court issued an order to show (OSC, ECF No. 250) against Gray regarding the untimeliness of his Petition. Federal Rule of Civil Procedure 54(d)(2)(B) requires a motion for attorney's fees to be filed "no later than 14 days after the entry of judgment[.]" In this case, judgment was entered on May 31, 2023, but Gray did not file this Petition until July 19, 2023. At a hearing on the matter, the Court discharged the order to show cause and took the Petition under advisement. (ECF No. 258.)

---

[2] Although IPI filed a voluntary Chapter 11 bankruptcy petition such that this instant case is stayed pursuant to 11 U.S.C. § 362(a) (ECF No. 293), the stay was partially lifted in order for the Court to adjudicate the instant Fifth Petition for Attorneys' Fees (*see* Mins. 3, ECF No. 311).

2

## II. LEGAL STANDARD

After entry of judgment, a party may move for attorney's fees pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), which provides that

Unless a statute or a court order provides otherwise, the motion must:

> (i) be filed no later than 14 days after the entry of judgment;
>
> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>
> (iii) state the amount sought or provide a fair estimate of it; and
>
> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Once the Court has determined that attorneys' fees and costs should be awarded, it must determine the reasonableness of the proposed amounts in a two-step process. First, "[d]istrict courts must calculate awards for attorneys' fees using the 'lodestar' method," which requires multiplying the hours "reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The lodestar amount is presumptively reasonable, but the court can adjust it upwards or downwards based on other considerations. *Van Gerwen*, 214 F.3d at 1046.

After calculating the lodestar figure, the second step is to "assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996) (citations omitted). The twelve *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or

the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976). Only in rare cases should the rate be adjusted. *Morales,* 96 F.3d at 363–64.

Although a "district court has a great deal of discretion in determining the reasonableness of the fee[,]" it is "required to independently review plaintiffs' fee request even absent defense objections." *Gates v. Deukmejian*, 987 F.2d 1392, 1398, 1401 (9th Cir. 1992) (citations omitted).

### III. DISCUSSION

Gray seeks attorneys' fees for three attorneys, three law student interns, and one paralegal, and costs for this action spanning five years. Before addressing the individual fees and costs, the Court first addresses IPI's objections raised in its opposition.

A. <u>IPI's Objections</u>

First, IPI asserts that no fee may be awarded for services rendered for Gray's front pay argument because the Court denied Gray's request for front pay. (Opp'n 2.) A court may decline to award fees for an unsuccessful claim where the lawsuit involved "distinctly different claims for relief that are based on different facts and legal theories," but such lawsuits are less common than cases premised on "a common core of facts or . . . based on related legal theories." *Hensley v. Eckherhart*, 461 U.S. 424, 434 (1983). Lawsuits based on a common set of facts or related legal theories "cannot be viewed as a series of discrete claims" and "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* In such cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* Here, although the

4

Court denied Gray's claim for front pay, it awarded him lost future earnings (Decision Granting Default J. 26, 30.) Moreover, Gray's request for lost future earnings was an alternative argument to front pay such that if he was awarded his full request for front pay, he did not seek additional lost future earnings. (ECF No. 177 at 31.) Gray's arguments for front pay and lost future earnings were based on a common core of facts. As even IPI recognizes, it would be hard to discern whether some entries involved front pay as they generally state that time was spent editing a brief with no distinction between the various claims. (*See* Opp'n 2-3.) The focus is on the overall relief obtained, which the Court recognizes is quite significant. (*See* Olivier Decl. ¶¶ 2, 18 (recognizing, as an attorney with over twenty years of experience in employment discrimination, that "obtaining damages in the amount of $5.68 million . . . is an outstanding result in the case of an individual discrimination plaintiff").) Therefore, the Court rejects IPI's contention and will not omit time spent on the front pay claim.

Second, IPI contends that Gray's counsel cannot properly bill Gray for the three hours spent "preparing fee agreement with his co-counsel, conflict waiver, reviewing fee agreement with his client, and revising the retainer agreement" as those only benefit the attorneys. (Opp'n 3.) IPI generally cites two cases that do not directly, or even indirectly, support its proposition. Conversely, one district court has awarded attorneys' fees for time spent arranging co-counsel agreement as the defendant did not dispute it was reasonable to retain co-counsel and the 2.45 hours spent was minimal compared to the total time spent on the litigation. *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 438 (S.D.N.Y. 2012). IPI did not dispute the propriety of Halegua joining Berline and Fitzgerald as co-counsel. Moreover, the three hours spent on this matter pale in comparison to the hundreds of hours the attorneys spent on this case. Thus, the Court will not reduce these hours.

Third, IPI asks the Court to closely scrutinize time entries for witness statement revision because it insinuates that counsel spent an alarmingly amount of time on declarations. (Opp'n 5.) This

5

claim is unsubstantiated as neither IPI nor the Court has identified any unethical conduct that would warrant not only a reduction in fees but an investigation. IPI concedes that it "is not suggesting in any way that there might be anything unethical or illegal ever occurred during the proceeding of this case." (*Id.*) Moreover, Gray explains that the amount of time counsel expended on the declarations was due to a myriad of factors including lengthy declarations and complex issues that needed to be "presented in a way that could be easily digested and understood by the Court." (Reply 6-7.)

B. Aaron Halegua, Esq.

i. *Reasonable Rate*

In order to determine if an hourly rate is reasonable, the court must identify the prevailing hourly rate for the relevant community, and then it must determine the appropriate market rate for the attorney based on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979 (citations omitted). Generally, the relevant community to ascertain an attorney's reasonably hourly rate "is the forum in which the district sits." *Radich v. Guerrero*, No. 1:14-cv-00020, 2016 WL 5109151, at *2 (D. N. Mar. I. Sept. 20, 2016) (quoting *Camacho*, 523 F.3d at 979). But "rates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id.* (quoting *Camacho*, 523 F.3d at 979).

Here, Gray seeks an hourly rate of $400 for Halegua using the national community of employment law because he purports that the Commonwealth of the Northern Mariana Islands ("CNMI") lacks attorneys with Halegua's expertise and specialization in employment discrimination and knowledge about IPI and the CNMI. (Pet. 8-14.) Although this Court previously awarded Halegua $400 an hour, that case was a civil Trafficking Victims Protection Reauthorization Act ("TVPRA")

6

action, which is such a specialized area of law that there were only 299 federal civil trafficking cases filed within thirteen years. (Am. Order Granting Pl.'s Att. Fees 5, *Tianming Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, No. 1:18-cv-00030 (D. N. Mar. I. May 6, 2020) ECF No. 108.) Moreover, this Court recognized only one prior civil TVPRA filed in this district, which involved only one plaintiff compared to the larger class in *Wang*. (*Id.* at 6.) In contrast, civil rights discrimination is less niche than TVPRA. Buttressing this conclusion are the twenty-three employment civil rights cases filed within this district in the seven years prior to the filing of the instant case. These cases negate Gray's proffer that the CNMI lacks local counsel with the necessary skills to pursue this case. *Cf. Radich*, 2016 WL 5109151, at *3 (using the nation as the relevant community for a pro hac vice attorney in a Second Amendment lawsuit as "six or seven prominent local attorneys had turned the cased down"). In fact, Halegua was not involved in these consolidated cases when they were first filed in 2019; he entered his appearance three years into the litigation. (Appl. For Pro Hac Vice Admission, ECF No. 194.) Moreover, Halegua is not the only one with knowledge about the CNMI and IPI; many CNMI attorneys are familiar with the CNMI's nuances and IPI's history in the CNMI. As such, the Court declines to use the nation as the relevant community to determine Halegua's rate for this case and will instead use the CNMI as the proper forum.

After graduating *magna cum laude* from Harvard Law School in 2009, Halegua was admitted to practice law in New York. (Halegua Decl. ¶¶ 4, 6.) He has fifteen years of experience in employment discrimination cases and has represented and/or counseled dozens of employment discrimination victims. (*Id.* ¶¶ 6-7.) Additionally, the American Bar Association's Labor and Employment Law Section and the National Employment Lawyers Association have invited Halegua to speak on employment discrimination matters. (*Id.* ¶ 14.) Although Gray did not provide comparable CNMI rates for Halegua, "a district court may rely on its own knowledge and experience regarding hourly rates"

7

when the legal community is small, like the CNMI. *Xerox Corp. v. Imperial Pac. Int'l (CNMI), LLC*, No. 1:20-cv-00037, 2021 WL 6884602, at *3 (D. N. Mar. I. Aug. 9, 2021) (citing *Sam K. ex rel. Diane C. v. Haw. Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015)). This Court has previously awarded attorneys with: around seventeen years of experience an hourly rate of $250, over fifteen years of experience an hourly rate of $225, and over ten years of experience an hourly rate of $200. *Id.* at *3 (citations omitted). Using the CNMI as the relevant community and recognizing Halegua's experience and expertise in employment discrimination, the Court awards him an hourly rate of $350.[3]

### ii. Number of Hours

To determine the reasonableness of the number of hours worked, the court cannot simply accept the hours presented by the attorney requesting fees, but instead must require that party prove that it exercised billing judgment for the hours billed. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018); *see also Hensley*, 461 U.S. at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397-98. "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 434). Time spent establishing the

---

[3] The Court also rejects IPI's argument that the attorneys' fees should be downward adjusted when Gray's "counsels self-promoted themselves as preeminent authorities in the field of employment discrimination." (Opp'n 6.) IPI questions "rudimentary" employment discrimination research that Fitzgerald conducted (*id.*), yet Halegua is the only attorney proclaiming specialization in employment discrimination. Further, the 165 hours of research that IPI highlights as exorbitant was divided among three attorneys, two law students, and a paralegal within the span of two years. (ECF No. 240-5.) Such research is reasonable as a large portion of the legal research was conducted for the motion for default judgment; the moving papers for that proceeding totaled over a hundred pages, excluding voluminous declarations and exhibits.

right to and amount of the fee should be included in the lodestar calculation. *Camacho*, 523 F.3d at 981.

Cumulatively, Halegua billed 300.79 hours from March 2022 through August 2023. (Pet. 15; Reply 9; Halegua Decl. 15-24; Second Halegua Decl. 5-7.) Halegua exercised discretion and did not include all his time entries; for example, he did not bill the legal research conducted for unfiled motions, time spent traveling to the CNMI (Halegua Decl. ¶¶ 40-41; Second Halegua Decl. ¶ 12.) Generally, the number of hours Halegua billed are reasonable; however, there are some entries that must be excluded. In his petition, Gray states that he is not seeking attorneys' fees for participating in the Limited Receivership. (Pet. 6.) However, several of Halegua's time entries that total 1.18 hours pertain to work on the receivership. (Halegua Decl. 21, 23.) Thus, the Court finds that Halegua reasonably expended 299.61 hours with an hourly rate of $350, which results in a fee award of $104,863.50.

C. <u>Bruce Berline, Esq.</u>

The Court previously awarded Berline an hourly rate of $300 in prior petitions for attorneys' fees and costs for this action.[4] (ECF No. 161 at 4.) For this instant petition, Berline seeks the same rate, which the Court finds is reasonable.

As for his hours, he billed a total of 175.58 hours for the time period between January 2020 and July 2023. (Pet. 15; Reply 9; Berline Decl. 7; Second Berline Decl. 2.) Berline states he also omitted time entries related to the receivership, but there are 1.1 hours pertaining to it (Berline Decl. 18-19), such that the Court strikes those entries.

---

[4] This instant petition for attorneys' fees does not seek attorneys' fees for entries that the Court previously awarded in the four prior fee petitions. (Pet. 6.)

9

Recognizing IPI's argument that Berline should not be awarded $300 an hour for time spent traveling (Opp'n 3), Gray proposed that Berline's 3.2 hours of travel time be billed at $150, half his hourly rate (Reply 5). This Court has approved travel entries at half the attorney's usual rate. *Radich*, 2016 WL 5109151, at *3 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig*, 19 F.3d 1291, 1299 (9th Cir. 1994)). Therefore, the Court approves 3.2 hours of Berline's travel time at $150 an hour.

A comparison of Berline's time sheets to his co-counsel's reveals some discrepancies not attributable to the time differences between the CNMI and New York. For example, Berline billed 1.98 hours for teleconferences held on May 9, 2022 with Halegua and Gray (Berline Decl. 15), yet Halegua only billed 1.08 hours on May 8, 2022 (Halegua Decl. 15). In another instance, Berline billed 1.10 hours on July 11, 2022 for a teleconference with Halegua discussing Gray's declaration (Berline Decl. 16) but Halegua has no corresponding entry for this despite billing for other teleconferences he held on July 10 and 11, 2022 (Halegua Decl. 16-17). While these discrepancies can be attributed to Halegua's decision to not record time for "phone calls that happened very late in the New York evening (but during working hours in Saipan)" (Halegua Decl. 11), the Court has some concerns such that it will apply a 5% reduction to Berline's hours, excluding the travel time.

In sum, the Court finds that Berline reasonably billed 162.72 hours at $300 an hour and 3.2 hours at $150 an hour, which totals $49,296.

D. William Fitzgerald, Esq.

For this case, the Court has already awarded Fitzgerald an hourly rate of $350 an hour (ECF No. 161 at 4), and thus applies this rate for this petition. Fitzgerald billed a total of 149.2 hours between May 2019 through July 2022. (Celis Decl. 4-9.)[5] As the Court reduced the travel rate for Berline, the

---

[5] Rita M. Celis "served as a legal assistant to William Fitzgerald, who worked on th[is] matter until his death in September 2022." (Celis Decl. ¶ 2.)

10

undersigned reduces the rate for Fitzgerald's 0.4 hours of travel time (Celis Decl. 7). Otherwise, the remaining hours expended are reasonable. Therefore, the Court awards Gray 0.4 hours at $175 an hour and 148.8 hours at $350 an hour, which amounts to $52,150 for Fitzgerald's fees.

### E. Law Students and Paralegals

Gray seeks paralegal fees for Katherine Zhang of $125 for 50.17 hours billed between August through November 2022 (Pet. 14-15; Halegua Decl. 31-32) and declined to seek 1.17 hours for the work she spent on this instant petition (Reply 9). In May 2022, Paralegal Zhang graduated from Cornell University and began working as a paralegal for Halegua. (Halegua Decl. ¶ 45.) Although this Court previously awarded Halegua's paralegal a rate of $125 an hour, it had used the entire country as the relevant community. (Am. Order Granting Pl.'s Att. Fees 14, *Tianming Wang*.) Since the Court did not use the nation as the forum for Halegua, it also declines to do so for Paralegal Zhang and uses the CNMI as the forum. This Court has previously found that an hourly rate of $90 for CNMI paralegals is reasonable. *Genc v. Imperial Pac. Int'l (CNMI) LLC*, No. 20-CV-00031, 2022 WL 16902801, at *6 (D. N. Mar. I. Nov. 12, 2022) (citation omitted).

One anomaly worth reducing are Paralegal Zhang's entries regarding cover pages for Gray's exhibits. Some entries are lumped together, but in total she billed over six hours adding, combining, proofreading, and updating cover pages for Gray's declaration. (Halegua Decl. 31.) Considering that Gray's declaration only had thirty exhibits (ECF No. 178 at 27), the Court finds this excessive and reduces this by 3.11 hours, the number of hours solely related to cover pages. Finding an hourly rate of $90 an hour and 47.06 hours reasonable, the Court awards Gray $4,235.40 for Paralegal Zhang's paralegal services.

11

Gray requests fees for three law students that worked with Halegua.[6] (Pet. 14; Reply 9). Yuhan Zhang worked on this action after graduating from Georgetown University Law Center in 2022. (Halegua Decl. ¶ 43.) Qinzhe Jin was a rising 2L from the University of California, Irvine School of Law while working on this matter. (*Id.* ¶ 44.) Yifu Dong worked on this case as a rising 3L from the Boston University School of Law. (Second Halegua Decl. ¶ 9.) Gray seeks a rate of $130 an hour for these law students based on *Wang.* (Pet. 8; Reply 9.) Although this Court previously awarded that rate for Halegua's law student interns, it had used a national market. *See Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, No. 1:18-CV-00030, 2022 WL 1105141, at *5 (D. N. Mar. I. Apr. 14, 2022). As explained above, the proper forum is the CNMI. But the Court recognizes that it has awarded law student rates "a slightly higher rate [than paralegals] to account for more extensive skills and knowledge of law students." *Id.* Thus, the undersigned finds an hourly rate of $100 for law student interns reasonable. In sum, the law students billed 126.74 hours. (Pet. 15; Reply 9.) Law student Zhang spent 8.05 working on the motion for default judgment memorandum of law's table of authorities and table of contents. (Halegua Decl. 26.) The Court also finds this excessive and reduces this to a one-hour entry. The remaining entries are reasonable. Therefore, the Court awards Gray 119.69 hours for the law students' work at an hourly rate of $100, which amounts to $11,969.

F. Experts

Gray seeks $27,795 as *costs* incurred for three experts for damages calculations (Berline Decl. 32), but they are more appropriately analyzed under attorneys' fees. "[E]xpert witness fees are only recoverable pursuant to a contract or explicit statutory authority." *Evanow v. M/V Neptune*, 163 F.3d 1108, 1117 (9th Cir. 1998) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439

---

[6] Although a fourth law student, Ms. Kristina Wang, also worked on this case, Gray does not seek fees for Wang. (Reply 9.)

(1987)). 42 U.S.C. § 1988(c) provides the court discretion to "include expert fees as part of the attorney's fee" for actions brought pursuant to 42 U.S.C. § 1981, such as this instant case. 42 U.S.C. § 2000e-5(k) also provides the court discretion to award the prevailing party in a Title VII case "a reasonable attorney's fee (including expert fees) as part of the costs[,]" like with this action.

Dr. Sanford L. Drob, Ph.D., "obtained [his] PhD in clinical psychology in 1987 and ha[s] practiced clinical and forensic psychology for roughly 35 years." (Drob Decl. ¶ 6, ECF No. 184.) Licensed in both New York and New Jersey, he has testified as an expert witness in clinical and forensic psychology on over ninety occasions. (*Id.* at 2, 17.) Dr. Drob charged $6,345 for 14.1 hours of work at $450 an hour for examining Gray and preparing his report. (Berline Decl. 44.) The Court relied upon Dr. Drob's report when awarding Gray emotional distress damages. (Decision Granting Default J. 8, 31-33.) Anthony K. Bird is a certified vocational rehabilitation counselor with forty-one years of experience who has "served as a vocational consultant and conducted many hundreds of vocational assessments of an individual's employability and earning potential for personal injury, wrongful termination, divorce, workers' compensation, Social Security, and other litigation cases." (Bird Decl. ¶ 3, ECF No. 185.) He received his bachelor's degree in social work from San Diego State University and his master's degree in vocational rehabilitation counseling from the University of Northern Colorado. (*Id.* at 12.) He has provided trial and deposition testimony in hundreds of cases. (*Id.* at 13-18.) His hourly rate is $425 (*id.* ¶ 6) and he charged $4,250 (Berline Decl. 32, 48), which amounts to ten hours of work. Mr. Bird prepared a forty-seven page declaration with exhibits (Bird Decl.), which the Court used when awarding Gray lost future earnings (Decision Granting Default J. 27-30). Dr. Nik Volkov, Ph.D., CVA, MAFF, is a forensic economist that bills at $450 an hour (Volkov Report 1, ECF No. 186.) Dr. Volkov has provided trial and deposition testimony in over fifty cases. (*Id.* at 28.) For this lawsuit, Dr. Volkov of Thomas Roney LLC billed a total of $17,100 (Berline

13

Decl. 32-33, 37, 39-40, 42), which amounts to thirty-eight hours at $450 an hour, reviewing, researching and calculating in order to prepare his report. The Court relied upon Dr. Volkov's report in analyzing Gray's arguments for back pay and lost future earnings. (Decision Granting Default J. 24-28.) IPI did not object to the reasonableness of the three experts' rates and hours.[7] The Court finds the amount reasonable and awards Gray $27,695 in expert fees. *See Head v. Glacier Nw., Inc.*, No. CV 02-373-RE, 2006 U.S. Dist. LEXIS 37907, at *5 (D. Or. Mar. 24, 2006) (awarding full expert fees after noting the lack of objection and the reasonableness of the amount). Gray calculated and requested $27,795 in expert fees; the $100 discrepancy is attributed to two $50 charges attached to Dr. Drob's payments (*compare* Berline Decl. 32, *with* Berline Decl. 44), which he explains accounts for a wiring fee when remitting payment outside the CNMI (Pet. 14 n.4.)

G. Costs

Omitting the expert fees, Gray seeks $6,126.74 for routine litigation costs, excluding legal research costs. (*Compare* Pet. 17-18, *with* Berline Decl. 32.) Although a majority of the costs are reasonable, the Court strikes several entries. The Court previously awarded Gray costs for office copies charges during the time frame that he currently seeks office copies charges for. (*See* ECF Nos. 64-1, 73, 83-1, 109, 143-1, 151-1, 161, 162.) For example, the Court awarded Gray's full request for costs of $400.75 in his fourth petition for attorneys' fees and costs (ECF No. 161 at 4), which included $336.75 in office copies charges from April 5, 2021 through September 30, 2021 (ECF No. 151-1 at 5.) The instant fifth petition seeks costs for office copies charges from January 1, 2020 through June 2, 2023. (Berline Decl. 32.) Gray does not clarify whether the current request for office copies charges is independent of the Court's prior awards of office copies charges such that the Court denies the office

---

[7] Rather, IPI's unfounded contention that Gray's counsel inappropriately drafted the experts' declarations (Opp'n 5) seems to suggest that the experts billed less hours than they should have since counsel allegedly helped prepare the declarations.

14

copies charges requests totaling $499, which is the amount the Court cumulatively granted Gray in its prior orders, to avoid a windfall. Along that same vein, the Court denies Gray's current request for $64 in an audio recording fee for the April 8, 2021 and April 29, 2021 hearings (Berline Decl. 32) since this exact cost was previously granted (ECF No. 161 at 4). Finally, the Court denies Gray's request for cost listed as "[s]taff time rendered at the hearing on 11/30/2022 Motion for Default Judgment (3.5hrs. @ $45.00/hr), preparation of exhibits (1.5 hrs. @ $45.00/hr)" for a total of $225 (Berline Decl. 32) as this appears to be Paralegal Zhang's billings for which the Court has already awarded above (*see* Halegua Decl. 32). The remaining costs are reasonable and are a result of having to litigate the instant action. The Court also incorporates the $100 wiring fee incurred for paying Dr. Drob as a litigation cost. Therefore, the Court awards $5,438.74 in costs for the five years of litigation.

## IV.     CONCLUSION

The Court GRANTS Gray's Fifth Petition for Attorneys' Fees (ECF No. 239) and awards Gray:

    A. $104,863.50 for hours expended by Attorney Halegua;

    B. $49,296 for hours expended by Attorney Berline;

    C. $52,150 for hours expended by Attorney Fitzgerald;

    D. $4,235.40 for hours expended by Paralegal Zhang;

    E. $11,969 for hours expended by Law Student Interns Zhang, Jin, and Dong;

    F. $27,695 for hours expended by the three expert witnesses, Dr. Drob, Mr. Bird, and Dr. Volkov; and

    G. $5,438.74 in costs.

In sum, this award amounts to $255,647.64. Additionally, Gray "request[s] the that the fees previously awarded by the Court but unpaid by IPI—namely, $57,355.75 pursuant to the Fourth Fee Order—be

incorporated into an amended judgment." (Pet. 18.) IPI did not contest its failure to pay this amount. Therefore, the Clerk is directed to issue an amended judgment to include the Fifth Petition of $255,647.64 and the Fourth Fee Order of $57,355.75 (ECF No. 161), which totals $313,003.39, for a total amended judgment amount of $5,999,185.59.

      IT IS SO ORDERED this 15th day of July 2024.

                                                  RAMONA V. MANGLONA
                                                  Chief Judge